the Court is directed to close the above-captioned action.

It is **SO ORDERED.**

**AARON BASHA CORP. and Aaron Basha, Plaintiffs,**

v.

**FELIX B. VOLLMAN, INC., Defendant.**

**Aaron Basha Corp. and Aaron Basha, Plaintiffs,**

v.

**Hampton Court Jewelers Ltd. Inc. a/k/a Cellini, JLC Jewelers Limited d/b/a Cellini, Lee Michaels Fine Jewelry, Lux Bond & Green, and Nordstrom, Inc., Defendants.**

**Nos. 98 CIV 8687 SHS, 99 CIV 1209 SHS.**

United States District Court, S.D. New York.

March 10, 2000.

Amy B. Goldsmith, George Gottlieb, Donna Mirman, Gottlieb, Rackman & Reisman, P.C., New York City, for plaintiffs.

Nancy E. Wolff, Law Offices of Nancy E. Wolff, New York City, for Felix B. Vollman, Inc., defendant.

## OPINION

STEIN, District Judge.

In this consolidated action, plaintiffs Aaron Basha Corp. and Aaron Basha (collectively, "Basha"), who market fine jewelry, allege that defendant Felix B. Vollman, Inc., who also markets fine jewelry, has infringed Basha's copyright in the design of baby shoe jewelry pendants, along with certain other claims. Defendant Felix B. Vollman, Inc. ("Vollman") has in turn counterclaimed against Basha, alleging misuse of copyright and various other claims. The remaining defendants—Hampton Court Jewelers Ltd. Inc. also known as Cellini, JLC Jewelers Limited doing business as Cellini, Lee Michaels Fine Jewelry, Lux Bond & Green, and Nordstrom, Inc.—are retailers that allegedly sell items of jewelry produced by Vollman.

Following discovery proceedings, Basha and Vollman have filed cross-motions for partial summary judgment pursuant to Fed.R.Civ.P. 56 on the issue of copyright infringement. For the reasons set forth below, Vollman's motion is granted, Basha's cross-motion is denied, and the count of copyright infringement is dismissed.

### BACKGROUND

Aaron Basha is the president of Aaron Basha Corp., which engages in the business of marketing fine jewelry. Since December 1996, Basha has held a license for the exclusive United States distribution of baby shoe pendants designed and manufactured by Staurino Fratelli, an Italian jewelry firm, and has owned the United States copyright for the pendants under the title "It's Shoe Time." See Pl.Ex. A (Certificate of Registration, No. VA 767-027, dated Dec. 26, 1996). The shoes are made of gold or silver, and some are decorated with enamel and precious gemstones in various colors and arrangements. The price of the Basha pendants ranges from $1,100 to $5,000, depending upon the value of the materials and the intricacy of the ornamentation.

Vollman also markets fine jewelry. In late 1996 or early 1997, Vollman began to develop a line of baby shoe jewelry pendants. It obtained a United States copyright for the pendants under the title "Infant Bootie" in April 1997 and began selling the pendants to the defendant re-

tailers in May 1997. *See* Def. Ex. H (Certificate of Registration, No. VAu 401–118, dated Apr. 2, 1997). Like the Basha shoes, the Vollman shoes are made of silver or gold, and some are decorated with jewels and enamel in varying arrangements and colors. The price of the Vollman pendants ranges from $550 to $3,000.

Basha first learned of the Vollman pendants in October 1997 and became convinced that these pendants illegally infringed upon its copyright in its own pendant designs. Basha subsequently filed this action, which alleges separate counts of copyright infringement, trade dress infringement, and state and common law claims pursuant to New York law. Vollman then filed counterclaims alleging misuse of copyright, Lanham Act violations, and common law claims pursuant to New York law. At the conclusion of discovery proceedings on Basha's claim of copyright infringement, the parties filed cross-motions for partial summary judgment with respect to the allegations of copyright infringement.

## DISCUSSION

### I. Partial summary judgment

Summary judgment may be granted "only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *see also* 11 Moore's Federal Practice § 56.40, at 56–280 (3d ed.1999). The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" *Allen*, 64 F.3d at 79 (citation omitted) (quoting *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 844 (2d Cir.1989)).

"In the context of copyright infringement, courts have regularly granted sum-

mary judgment where it is 'clear' that the plaintiff cannot make out the essential elements of the claim." *Tuff 'N' Rumble Management, Inc. v. Profile Records, Inc.*, No. 95 Civ. 0246, 1997 WL 158364, at *2 (S.D.N.Y. Apr. 2, 1997) (collecting cases); *see Repp v. Webber*, 132 F.3d 882, 890 (2d Cir.1997), *cert. denied*, 525 U.S. 815, 119 S.Ct. 52, 142 L.Ed.2d 40 (1998). In this case, partial summary judgment is appropriate, "since there are no relevant disputed issues of material fact that affect the Court's disposition of the cross-motions." *Calise Beauty Sch., Inc. v. Riley*, No. 96 Civ. 6501, 1997 WL 630115, at *6 (S.D.N.Y. Oct.9, 1997).

### II. Copyright infringement

■ "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296, 113 L.Ed.2d 358 (1991) (citing *Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 548, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985)). For purposes of the present cross-motions for summary judgment, Vollman does not dispute the validity of Basha's copyright. *See Behnam Jewelry Corp. v. Aron Basha Corp.*, 45 U.S.P.Q.2d 1078, 1086–89 (S.D.N.Y.1997) (rejecting challenge to validity of Basha's copyright in unrelated suit). Rather, the focus of the motions is the second element, illegal copying.

■ In order to demonstrate illegal copying, a plaintiff must make two showings. First, "a plaintiff must ... show that his work was actually copied" either by introducing direct evidence of copying or else "by proving 'access and substantial similarity between the works.'" *Laureyssens v. Idea Group, Inc.*, 964 F.2d 131, 139 (2d Cir.1992) (quoting *Folio Impressions, Inc. v. Byer California*, 937 F.2d 759, 765 (2d Cir.1991)). Second, "[t]he plaintiff then must show that the copying amounts to an 'improper' or 'unlawful' appropriation

by demonstrating that substantial similarities relate to protectable material." *Id.* (citing *Arnstein v. Porter,* 154 F.2d 464, 468 (2d Cir.1946)). Because the question of unlawful appropriation is dispositive of both cross-motions, this Court limits its ruling strictly to that element.

■ Copying of a copyrighted work constitutes unlawful appropriation only if there exists substantial similarity as to protectible material between the works at issue. *See Laureyssens,* 964 F.2d at 140 (citing *Folio Impressions,* 937 F.2d at 765). Therefore, "a district court may determine noninfringement as a matter of law on a motion for summary judgment either when the similarity concerns only noncopyrightable elements of plaintiff['s] work, or when no reasonable trier of fact could find the works substantially similar." *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 48 (2d Cir.1986) (citing *Warner Bros. Inc. v. American Broad. Co.,* 720 F.2d 231, 240 (2d Cir.1983)); *accord Williams v. Crichton,* 84 F.3d 581, 587 (2d Cir.1996). In other words, a court entertaining a motion for summary judgment with respect to this element must "decide whether the lack of substantial similarity between the protectible aspects of the works is 'so clear as to fall outside the range of disputed fact questions' requiring resolution at trial." *Walker,* 784 F.2d at 48 (quoting *Warner Bros., Inc.,* 720 F.2d at 239).

III. Protectible elements in the Basha pendants

A. Collateral estoppel

■ In its memoranda, Vollman relies extensively on the discussion of substantial similarity in *Behnam Jewelry Corp. v. Aron Basha Corp.,* 45 U.S.P.Q.2d 1078 (S.D.N.Y.1997). In that decision, Judge Robert W. Sweet granted Basha's motion for a preliminary injunction protecting its baby shoe pendants against infringement by other jewelers who are not parties to the present action; and in reaching that conclusion, the court engaged in an extensive analysis of the protectible aspects of Basha's baby shoe pendants. *See id.* at 1092–94. Although that litigation was ultimately settled prior to trial, Vollman contends that, pursuant to the doctrine of collateral estoppel, the *Behnam* decision preclusively limits the scope of Basha's copyright protection in its baby shoe pendants solely to the specific features found to be protectible in that decision. In response, Basha contends that the *Behnam* decision lacks the requisite finality to preclude this Court from making an independent determination of protectability.

"Collateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a 'full and fair opportunity to litigate . . . in [a] prior proceeding' and where 'the decision of the issue was necessary to support a valid and final judgment on the merits' in the first action." *Irish Lesbian & Gay Org. v. Giuliani,* 143 F.3d 638, 644 (2d Cir.1998) (alterations in original) (quoting *Metromedia Co. v. Fugazy,* 983 F.2d 350, 365 (2d Cir.1992)); *accord BCCI Holdings (Luxembourg), Societe Anonyme v. Pharaon,* 43 F.Supp.2d 359, 366 (S.D.N.Y.1999). Thus, because of the requirement that there be "'a valid and final judgment on the merits' in the first action," "[o]rdinarily, findings of fact and conclusions of law made in a preliminary injunction proceeding do not preclude reexamination of the merits at a subsequent trial." *Irish Lesbian & Gay Org.,* 143 F.3d at 644.

However, in limited situations, a decision on a motion for preliminary injunction may be deemed sufficiently final to have preclusive effect depending "upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review." *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir. 1961); *accord Don King Prods., Inc. v. Douglas,* 742 F.Supp. 741, 754–55 (S.D.N.Y.), *on reargument,* 742 F.Supp. 786 (S.D.N.Y.1990). A review of the *Behnam* decision indicates that this is not one of those limited situations where a decision

on a motion for a preliminary injunction should be given preclusive effect.

First, the *Behnam* decision repeatedly emphasized that the grant of a preliminary injunction requires that the moving party demonstrate a "likelihood of success on the merits," 45 U.S.P.Q.2d at 1086, 1093, thereby making it clear that the decision was not a final adjudication of the merits. Second, in addition to granting the preliminary injunction, the *Behnam* decision also granted Basha's motion for expedited discovery of the full nature of the infringing activities, *see* 45 U.S.P.Q.2d at 1094, making it explicit that the decision was subject to modification in light of any new evidence. Finally, the *Behnam* court granted preliminary injunctive relief only "pending a trial on the merits of this action." *Id.* Thus, the *Behnam* decision explicitly anticipated a fuller adjudication of the merits at trial, and it will not collaterally estop Basha from litigating the issue of substantial similarity here. *See I.H.T. Corp. v. News World Communications*, No. 83 Civ. 3862, 1984 WL 604, at *2–4 (S.D.N.Y. July 3, 1984); Restatement (Second) of Judgments § 13 cmt. a, g (1980).

## B.  Legal standard and analysis

■ "It is 'a principle fundamental to copyright law' that 'a copyright does not protect an idea, but only the expression of an idea.'" *Williams*, 84 F.3d at 587 (quoting *Kregos v. Associated Press*, 3 F.3d 656, 663 (2d Cir.1993)); *see* 17 U.S.C. § 102(b) (1994). Indeed, "there is no dispute that the simple idea of a baby shoe pendant is unprotectable." *Behnam*, 45 U.S.P.Q.2d at 1093; *see Herbert Rosenthal Jewelry Corp. v. Honora Jewelry Co.*, 509 F.2d 64, 65 (2d Cir.1974) (per curiam) (idea of jeweled turtle pin is unprotectable); *Herbert Rosenthal Jewelry Corp. v. Kalpakian*, 446 F.2d 738, 742 (9th Cir.1971) (idea of jeweled bee pin is unprotectable). Similarly, the idea of using precious metals, gemstones, and enamel to decorate a pendant is unprotectable, since these decorative features are commonly used throughout the jewelry business. *See Judith Ripka Designs, Ltd. v. Preville*, 935 F.Supp. 237,

248 (S.D.N.Y.1996) ("Commonly used elements of jewelry designs are not entitled to copyright protection.").

At the same time, the particular original expression given to such ideas and common features may be protectible. *See Fisher–Price, Inc. v. Well–Made Toy Mfg. Corp.*, 25 F.3d 119, 124 (2d Cir.1994) (finding likelihood of success on copyright claim where parties' dolls did not "merely share features that are common to all dolls" but "contain[ed] virtually identical expressions of those features"). Moreover, "a work may be copyrightable even though it is entirely a compilation of unprotectable elements." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1003–04 (2d Cir.1995) (citing *Feist Publications, Inc.*, 499 U.S. at 362, 111 S.Ct. at 1296) (finding plaintiff's sweater designs protected with respect to arrangement of leaves and squirrels together with "fall" palette of colors and geometric background patterns). In the case of such a compilation, "[w]hat is protectible then is 'the author's original contributions'—the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work.'" *Id.* at 1004 (quoting *Feist Publications, Inc.*, 499 U.S. at 350, 358, 111 S.Ct. at 1290, 1294).

■ Accordingly, this Court concludes as a matter of law that the protectible aspects of Basha's baby shoes consist of the "specific choices as to size, shape, proportion, and ornamentation," as well as the specific choices as to coordination and arrangement of the ornamental features, that together "constitute an artistic expression of a baby shoe pendant beyond its stereotypical features." *Behnam*, 45 U.S.P.Q.2d at 1093; *see id.* at 1092 ("Protectible elements are found in [Basha's] different arrangements of the ornamentation.").

## IV.  Substantial similarity

### A.  Legal standard

■ In the context of unlawful appropriation, competing works are analyzed for

substantial similarity using the "ordinary observer" test, which asks "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Hamil America, Inc. v. GFI*, 193 F.3d 92, 100 (2d Cir.1999) (citing *Knitwaves*, 71 F.3d at 1002), *cert. denied*, — U.S. —, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000). In the words of Judge Learned Hand, this test inquires whether " 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the works'] aesthetic appeal as the same.' " *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960)). The average lay observer, using her "[g]ood eyes and common sense," is enjoined to examine the "total concept and feel" of the works and to give " 'due weight to the uses for which the design is intended, especially the scrutiny that observers will give to it as used.' " *Id.* at 102 (citations and quotation marks omitted); *see Knitwaves, Inc.*, 71 F.3d at 1004–05; *Judith Ripka Designs, Ltd.*, 935 F.Supp. at 248–56.

■ Crowding another angel onto the head of this particular pin, Vollman contends that this Court should apply the "more discerning" ordinary observer test, which ignores the unprotectable portions of a plaintiff's work and instead " 'compare[s] only those elements which are in themselves copyrightable.' " *Hamil America, Inc.*, 193 F.3d at 101 (quoting *Knitwaves, Inc.*, 71 F.3d at 1003). The U.S. Court of Appeals for the Second Circuit has explained, however, that that test applies only if a plaintiff has imported a substantial portion of its work from the public domain; in that situation, the test excludes consideration of the imported portion from the substantial similarity analysis. *See id.* at 100–02.

Aside from that limited situation—not present here—the ordinary observer test requires that works be considered as a whole in determining whether substantial similarity exists as to protectible aspects of the plaintiff's work. *See id.* This emphasis on "total concept and feel" is particularly compelling in a case such as the present one where the expressive selection, coordination, and arrangement of unprotectable elements may itself be protectible. *See id.* at 103 ("When we compare[ ] the 'total concept and feel' of two items . . ., we focus[ ] on the original way the author 'selected, coordinated and arranged the elements of his or her work.' " (quoting *Knitwaves, Inc.*, 71 F.3d at 1004)).

Accordingly, this Court declines to apply the "more discerning" ordinary observer test and instead applies the ordinary observer test articulated by the Second Circuit in *Hamil America, Inc. v. GFI*.

## B. Survey evidence

Basha seeks to introduce survey evidence that, according to Basha, demonstrates that lay observers find the Vollman and Basha baby shoe pendants substantially similar. This Court need not decide whether this survey evidence is admissible, however, in order to resolve the question of substantial similarity. *See generally Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224–39 (2d Cir.1999). To begin with, it is far from clear whether the survey proffered by Basha correctly defined the concept of "substantial similarity" for the consumers who were polled. During the survey, the consumers were shown baby shoe pendants in successive displays and were instructed as follows:

> " 'Substantially similar' means that the baby shoes in front of us now are so similar in their *design and specific appearance* to the baby shoes you saw before that there is a substantial likelihood that a person might *purchase by mistake* those in front of us when he or she intended to buy those you saw before."

Pl.Ex. J, at 7 (emphasis in original).

■ The case law, however, simply does not define "substantial similarity" by reference to likelihood of consumer confusion.

Moreover, the Second Circuit has explained that substantial similarity "is not a concept familiar to the public at large" but rather "is a term to be used in a courtroom to strike a delicate balance between the protection to which authors are entitled under an act of Congress and the freedom that exists for all others to create their works outside the area protected against infringement." *Warner Bros. Inc.*, 720 F.2d at 245. Accordingly, the Second Circuit has found that, where otherwise admissible survey evidence relies on an imprecise definition of substantial similarity, such evidence cannot alter a trial court's ruling "that two works are not substantially similar as a matter of law," since the contrary views of the population "cannot be permitted to enlarge (or diminish) the scope of statutory protection enjoyed by a copyright proprietor." *Id.*

Therefore, because Basha's survey relied on an imprecise definition of substantial similarity, this Court declines to consider this survey evidence in resolving Vollman's motion for partial summary judgment. For analogous reasons, this Court also declines to consider Basha's additional evidence of confusion on the part of individual consumers. *See* Aff. of Basha ¶¶ 11–12.

C.  Analysis

■  At first glance, the Basha and Vollman baby shoe pendants appear similar. Both are small—about two centimeters long, exclusive of the bails—and both express the same unprotectable concept of a baby shoe pendant adorned with precious metals, gemstones, and enamel. However, a more considered evaluation of the pendants, of the sort the average layman buying or wearing such precious jewelry would undertake, reveals significant differences both in the expressive details and in the total concept and feel of the pendants.

To begin with, the shapes, proportions, and sizes of the pendants differ noticeably. The Basha pendants follow the design of a "Mary Jane" shoe with a low, broad instep at the ankle. By contrast, the Vollman pendants are crafted in the shape of a baby "bootie" with the ankle tapering upward to a narrower opening. The soles of the Basha pendants are flat, while those of the Vollman pendants follow a curve that causes the shoe to rise slightly at the toes and heel. Although both sets of pendants share the bulbous toe area commonly found on baby shoes, this area is significantly larger on the Vollman product. In addition, the bails on the Vollman pendants are thicker and more oblong than the rounded, circular bails of the Basha product. The Vollman pendants are also heavier than the Basha pendants.

The stylistic and decorative details also differ significantly. None of the Vollman pendants has a strap across the instep, while about half of the Basha pendants do have such a strap. Each of the Basha pendants lacking such a strap has one of two styles of bow lying horizontally on the front of the shoe: either a large "bow tie" set askew on a thick band across the shoe, or else a much smaller decorative bow set at center between the instep and a thinner band of precious metal. By contrast, each of the Vollman pendants has one of two ornaments set vertically just in front of the instep: either a large bow set at center with the ends of the laces extending downward, or else untied laces falling down toward the toe in open crisscross fashion. Consequently, the bows on the Basha pendants appear as purely ornamental motifs, whereas the Vollman bows simulate the tied laces of a child's shoe. *See Behnam*, 45 U.S.P.Q.2d at 1096 (differences in bows on baby shoe pendants yielded lack of substantial similarity).

On the Basha pendants, moreover, a band in front of the instep divides the surface of the shoe into two decorative fields: a small toe portion and a fairly long heel portion. On the Vollman pendants, however, two bands on either side of the instep divide the surface into three decorative fields, giving the pendant the distinct appearance of a "saddle shoe." As a result of these differences in the arrangement of

the decorative fields, the respective shoes express a different concept and feel, even in those designs embodying similar dual color schemes in the gemstones and enamel. *Cf. Behnam,* 45 U.S.P.Q.2d at 1096 (division of both shoes into similar decorative fields together with similar color scheme yielded substantial similarity).

Other asserted similarities between the pendants are minimal when viewed in context. While certain shoes in both sets bear a jeweled field on the toe, these jewels display distinct patterns. The toes of the Vollman shoes carry thirteen gemstones set in two parallel rows on the toes, whereas those of the Basha shoes bear either a field of pavé jewels or else jeweled clusters totaling seven gemstones. Furthermore, although jewels adorn some bows in both sets of pendants, the differences between the bows, discussed above, minimize the visual impact of this similarity. Because these similarities "are of 'small import quantitatively or qualitatively,'" they are incapable of supporting an inference of unlawful appropriation. *Williams,* 84 F.3d at 588 (quoting *Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir.1992)); *see generally Attia v. Society of the New York Hosp.,* 201 F.3d 50, 54–58 (2d Cir. 1999).

In sum, the differences between the pendants are sufficiently significant, and any similarities are sufficiently minimal, that the ordinary observer considering the total concept and feel of the pendants would not infer that the Vollman baby shoe pendants appropriate expressive details or decorative arrangements from the Basha pendant designs. Accordingly, this Court concludes as a matter of law that the Basha and Vollman baby shoe pendants are not substantially similar with respect to the protectible elements of the Basha pendant designs. *See Herbert Rosenthal Jewelry Corp.,* 509 F.2d at 65–66 & n. 1.

*CONCLUSION*

For the reasons set forth above, Vollman's motion for partial summary judgment is granted, Basha's cross-motion for partial summary judgment is denied, and Count I should be dismissed.