In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 03-2651 & 03-2765

NATHANIEL LINDELL,

*Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

MATTHEW J. FRANK,* *et al.*,

*Defendants-Appellees,*
*Cross-Appellants,*

and

CINDY O'DONNELL, *et al.*,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 02-C-21-C—**Barbara B. Crabb**, *Chief Judge.*

SUBMITTED MARCH 19, 2004**—DECIDED JULY 19, 2004

---

* Pursuant to Fed. R. App. P. 43(c), Matthew J. Frank, the current Secretary of the Wisconsin Department of Corrections, is substituted for Jon E. Litscher.

** After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal and cross-appeal are submitted on the briefs and the record. See Fed. R. App. P. 34(a)(2).

Before RIPPLE, KANNE, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Nathaniel Lindell, an inmate at the Wisconsin Secure Program Facility (WSPF), sued prison officials and staff alleging numerous civil rights violations. In a comprehensive order, the district court dismissed much of Lindell's complaint after screening it under 28 U.S.C. § 1915A but granted him leave to proceed *in forma pauperis* on seven claims. Later, in another thorough order, the court granted summary judgment for the defendants on six of the surviving claims, but it awarded Lindell injunctive relief on the final claim. The court found that the defendants had qualified immunity, however, precluding an award of damages on that claim.

On appeal Lindell challenges the grant of summary judgment for the defendants on the six claims he lost, as well as the refusal to award more than injunctive relief for the claim on which he prevailed. Lindell also challenges the dismissals of all but one of his claims screened out under § 1915A and contests a number of procedural rulings by the district court. In their cross-appeal, the defendants seek to overturn the award of injunctive relief to Lindell, arguing both that he was entitled to no relief at all and that the injunction framed by the district court is overly broad and thus violates the Prison Litigation Reform Act (PLRA), see 18 U.S.C. § 3626(a)(1). Although we concur with most of the district court's rulings, we conclude that one of Lindell's First Amendment claims dismissed at initial screening should have been allowed to proceed. We also agree with the defendants that the injunction entered by the court must be modified to bring it into conformity with the PLRA.

**I**

In light of the district court's careful consideration of each of Lindell's claims, we find it necessary to address only the single First Amendment claim that should have been allowed to proceed. In his complaint Lindell alleged that the defendants violated his right to free speech by "arbitrarily" confiscating picture postcards from his cell; he says that the defendants told him at the time that he could possess no more than five postcards at one time. Lindell does not describe the pictures on the confiscated postcards, but says only that they "were meant to convey a message." In dismissing this claim, the district court reasoned that, regardless whether Lindell had alleged a protected right to possess his postcards, the defendants' "policy" of allowing only five postcards in a cell at a time was reasonably related to the prison's security interest in limiting the number of items each inmate has in his cell.

When a prison regulation restricts a prisoner's First Amendment right to free speech, it is valid only if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Kikumura v. Turner*, 28 F.3d 592, 598 (7th Cir. 1994). There are four factors that courts must consider in determining whether a prison regulation is constitutional: whether the regulation is rationally related to a legitimate and neutral governmental objective; whether there are alternative means of exercising the right that remain open to the inmate; what impact an accommodation of the asserted right will have on guards and other inmates; and whether there are obvious alternatives to the regulation that show that it is an exaggerated response to prison concerns. *Turner*, 482 U.S. at 89-91.

Although it might be possible to envision a security justification that would support the defendants' action, we believe that the district court acted prematurely in presuming such a justification. In his complaint Lindell did not concede

that there even is such a prison policy limiting the number of picture postcards that can be possessed in a cell. To the contrary, he alleged that there was nothing in the prison rule book about postcards and that the defendants' confiscation of his postcards was arbitrary. Thus, at the outset we have a disputed issue of material fact: what exactly did the prison's policy provide, and what if any exceptions did it recognize?

It is impossible to evaluate the First Amendment implications of this case without the answers to those questions. We do not rule out, at this early stage, the possibility that the defendants might be able to show that Lindell's postcards were justifiably removed from his cell, but this determination cannot be made without knowing the reasons behind their removal. See *Procunier v. Martinez*, 416 U.S. 396, 415 (1974) (prison officials violate the First Amendment when for reasons unrelated to legitimate penological interests they engage in "censorship of . . . expression of 'inflammatory political, racial, religious or other views' and matter deemed 'defamatory' or 'otherwise inappropriate.'"). Because this claim was dismissed at screening, the defendants were never required to explain the basis for confiscating some of Lindell's postcards, and in their brief in this court the defendants do not even address his argument that this claim should have been allowed to go forward. Accordingly, we vacate the district court's dismissal of this claim. In all other respects, we reject Lindell's arguments on appeal.

## II

We turn now to the defendants' cross-appeal. The Wisconsin Department of Corrections (DOC) has implemented a broad "publishers only" rule—a policy of allowing inmates to receive published materials only from a publisher or other commercial source. In his complaint Lindell claimed

that this policy is unconstitutional to the extent that it prohibits him from receiving clippings of published articles, or photocopies of such clippings. Specifically, Lindell alleges that he was not permitted to receive a clipping of an article from the magazine, *Farm and Ranch Living*, that was sent to him by his father. At summary judgment, the defendants justified their ban on clippings and photocopies of clippings by arguing that it is reasonably related to their interest in reducing the time prison staff members must spend searching for potential hidden messages in clippings mailed from noncommercial sources.

There is no question that "publishers only" rules that restrict prisoners from receiving hardcover books from any noncommercial sources are reasonably related to a prison's interest in preventing contraband from being smuggled into the prison. *Bell v. Wolfish*, 441 U.S. 520, 555 (1979). Courts have extended the reasoning in *Bell* to other types of materials from noncommercial sources that could easily conceal smuggled contraband, such as magazines and softbound books. *See Ward v. Washtenaw County Sheriff's Dept.*, 881 F.2d 325, 329 (6th Cir. 1989) ("publishers only" rule that restricted receipt of magazines reasonably related to legitimate interests in controlling smuggled contraband and saving staff resources); *Hurd v. Williams*, 755 F.2d 306, 308-09 (3d Cir. 1985) ("publishers only" rule that restricted receipt of newspapers, periodicals, and softbound volumes reasonably related to government interest in controlling smuggled contraband and saving staff resources); *Kines v. Day*, 754 F.2d 28, 30 (1st Cir. 1985) ("publishers only" rule that restricted receipt of hardcover, softcover, and newspaper publications reasonably related to prison's interest in "internal security"); *Cotton v. Lockhart*, 620 F.2d 670, 672 (1980) ("publishers only" rule that restricted receipt of hard and softcover books reasonable response to interest in "institutional security"). But as far as we can tell, in all of these situations the plaintiffs were demanding access to the

entire publication and the dispute was focused on whether it was permissible to require the inmate to obtain the publication directly from the publisher. The difference here is that for Lindell to obtain from the publisher or other commercial source a clipping such as the one his father sent would effectively require that he purchase the full publication.

The defendants cite *Hause v. Vaught*, 993 F.2d 1079, 1083-84 (4th Cir. 1993), for the proposition that, as a matter of law, clippings from periodicals can be assumed to pose the same dangers as bound periodicals and hardcover books. Although the court in *Hause* did hold that a ban on all published materials (regardless of source or type) was a constitutional restriction on a pretrial detainee's free-speech rights, the court also stated that its holding was limited to the facts before it, including the fact that the plaintiff was seeking damages for limitations placed on his rights during limited periods of short-term confinement. Apparently only one circuit has addressed the constitutionality of a specific ban on clippings from other than commercial sources. In *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995), the Second Circuit reversed a grant of summary judgment for prison officials and held that the defendants' purported interests in such a ban—preventing the dissemination of inflammatory material and saving staff resources—were not reasonably related to the prison's policy. *Id.* at 80-81.

Here, Lindell challenges the way that officials at WSPF interpreted the DOC's general publications policy, which merely states that "[i]nmates may only receive publications directly from the publisher or other recognized commercial sources in their packages," see Wis. Admin. Code DOC 309.95(2)(a). The question before us is a narrow one. It does not implicate the constitutionality of the DOC's publishers' only rule; rather, it concerns the question whether Lindell's right to receive and exchange information was violated by

WSPF's application of that general policy to publication clippings and photocopies of clippings.

WSPF's rule satisfies the first *Turner* factor. The defendants' security interest in screening for hidden messages and their economic interest in saving staff resources are both legitimate. Although the district court held otherwise, there is a rational connection between these interests and a policy that lowers the overall number of mailed items that require screening.

But the remaining *Turner* factors, which relate to whether the anti-clipping or anti-copy policy is a reasonable solution to the stated security problem, weigh against the defendants. First, Lindell did not have an alternative means of exercising his rights. As the district court noted, Lindell had been in WSPF's most restrictive housing level, level one, and he did not have access to the prison library's limited supply of publications. And even if he had access to the prison's material or paid for his own subscriptions, subscriptions are not fully equivalent to clippings "because subscribing requires inmates to anticipate which papers might have articles that they like to read and to subscribe to all such papers." *Allen*, 64 F.3d at 80. Second, the defendants could accommodate Lindell's rights without a large burden on staff. As the district court noted, the defendants are already screening personal mail, which could just as easily contain hidden messages. It appears that the problem is not clippings exclusively; it is the overall volume of mail that could potentially contain hidden messages. This overall volume could be addressed by limiting the number of clippings that can be sent to an inmate. Additionally, the prison could allow only photocopies of clippings rather than the clippings themselves, so that prison staff are screening more manageable material. *See Lake v. Borgen*, No. 03-C-372-S, slip opinion at 6 (W.D.Wis. Jan. 15, 2004) (holding that prison rule that banned receipt of publication clippings from noncommercial sources was constitutional when prison

allowed inmate to receive photocopies of clippings as an alternative means of exercising his right).

Although it is a close issue because of the deference prison administrators enjoy in these cases, see *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989), in light of Lindell's lack of other access to the restricted materials and the less exaggerated responses available to the prison, we agree with the Second Circuit's decision in *Allen* and with the district court that WSPF's ban as currently applied to all clippings and copies violated Lindell's First Amendment rights. Still, the district court was correct to award only injunctive relief on this claim. The constitutionality of a wholesale ban on publication clippings is not a question that had been answered previously in this circuit, and the breadth of any permissible set of restrictions less than a complete ban has yet to be determined. Accordingly, the district court was correct in concluding that Lindell's constitutional right to receive clippings was not clearly established, and as a result defendants are entitled to qualified immunity on this claim. *See May v. Sheahan*, 226 F.3d 876, 881 (7th Cir. 2000).

The defendants alternatively argue that the district court's injunction is overbroad and should be vacated. The relevant provision of the PLRA provides:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). The defendants are correct that the district court's injunction "prohibiting defendants from enforcing their publisher's only rule to the extent that it prohibits inmates from receiving any newspaper and magazine clippings and photocopies in the mail" is too broad because, as written, it applies to all inmates rather than just Lindell. *See generally Gomez v. Vernon*, 255 F.3d 1118, 1130 (9th Cir. 2001) (holding that district court satisfied § 3626(a)(1) by limiting relief to the six named inmates rather than entire prison population). The defendants also contend that the injunction is overbroad because it could be read to prevent the prison from banning *any* photocopies rather than just photocopies of clippings from published sources, or from imposing reasonable restrictions on the form and number of clippings. We agree. On remand, the district court must modify the injunction to make it conform more closely to the violation that was found.

## III

For these reasons, the district court's dismissal of Lindell's free-speech claim premised on the defendants' confiscation of postcards from his cell is VACATED, and that claim is REMANDED for further proceedings. The district court is also directed to redraft its injunction to conform with the requirements of 18 U.S.C. § 3626(a)(1)(A) and this opinion. In all other respects the judgment of the district court is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*