UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 1, 2006[*]
Decided November 8, 2006

**Before**

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. DIANE P. WOOD, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 06-1983

| | |
|---|---|
| NATHANIEL LINDELL,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Western District of Wisconsin |
| *v.* | |
| | No. 05-C-04-C |
| CINDY O'DONNELL, et al.,<br>    *Defendants-Appellees.* | Barbara B. Crabb,<br>*Chief Judge.* |

**O R D E R**

Nathaniel Lindell, an inmate at the Wisconsin Secure Program Facility, is a frequent litigator in the federal courts. In this action under 42 U.S.C. § 1983, Lindell lodged 18 different claims, most purportedly arising under the Free Speech Clause of the First Amendment, against more than 30 employees of the Wisconsin prison system. Two of the claims went to a jury, which found for the defendant, and the rest were disposed of by the district court in a thoroughly reasoned, 79-page order. Lindell appeals and raises a litany of arguments concerning both the district court's decision at summary judgment and its conduct of the trial, but most of his

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

contentions are too insubstantial to warrant discussion. We commend Chief Judge Barbara B. Crabb for her careful consideration of Lindell's complaint, and, with the following three exceptions, we see no reason to add to her exhaustive treatment of his claims.

First, we consider Lindell's claim that in April 2002 mailroom personnel confiscated three used law books, two of them hardcover, that were sent by an organization called Books Through Bars. Books are permitted at WSPF, but they must be shipped directly from the publisher or a retailer and be accompanied by a receipt. *See* WIS. ADMIN. CODE § DOC 309.05(2)(a); WSPF Policies & Procedures Manual § 530.02(VII)(D)(1), (F)(1) (revised effective Jun. 25, 2001). It is undisputed that the books were seized because they did not originate with the publisher or a retailer, and were not accompanied by the required receipt, but Lindell claimed that this "publishers only" policy violates his First Amendment rights. In the district court, however, the defendants argued, not the merits of the claim, but that Lindell did not exhaust his disagreement with the seizure through the administrative grievance process. *See* 42 U.S.C. § 1997e(a). The defendants argued, and the court agreed, that Lindell failed to exhaust because, while he *tried* to file a grievance about the seizure, his grievance was returned unprocessed with the explanation that he already had reached his limit of two grievances for that week, *see* WIS. ADMIN. CODE § DOC 310.09(2), and, moreover, the grievance he submitted raised more than one issue, *see id.* § DOC 310.09(1). In the district court's view, Lindell had not complied with the prison's grievance procedure, and thus he did not exhaust this claim. *See Woodford v. Ngo*, 126 S. Ct. 2378, 2382 (2006) (holding that prisoner does not satisfy exhaustion requirement by filing untimely or otherwise procedurally defective administrative grievances or appeals); *Riccardo v. Rausch*, 375 F.3d 521, 523 (7th Cir. 2004) ("Prisoners must follow state rules about the time and content of grievances."); *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002) ("[P]risoner[s] must file complaints and appeals in the place, and at the time, the prison's administrative rules require.").

On appeal Lindell argues that § 1997e(a) is not an impediment to his claim because the defendants' "refusal" to process his grievance rendered the administrative process "unavailable." *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (explaining that administrative remedy is "unavailable" if prison administrators "do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhaustion"); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (explaining that inmates need only exhaust those remedies that are available). For their part the defendants have abandoned reliance on lack of exhaustion as a defense and tell us that the district court "may have dismissed this claim for the wrong reason." Still, the defendants insist, the claim loses on the merits. We agree. As we emphasized in another of Lindell's suits against these very defendants, "publishers only" rules "are

reasonably related to a prison's interest in preventing contraband from being smuggled into the prison." *Lindell v. Frank*, 377 F.3d 655, 658 (7th Cir. 2004); *see Bell v. Wolfish*, 441 U.S. 520, 555 (1979).

But we add a caveat. At summary judgment Lindell maintained that WSPF has a policy of banning all hardcover and used books, no matter the source, and indeed the district court states in its order that the facility has such a policy approved by the warden. We think the court's understanding of the prison's policy is a fair reading of the defendants' own statement of uncontested facts; they assert that hardcover books may be employed as weapons or to conceal contraband, and that used books may conceal contraband within their pages or the pages may even be laced with drugs. These are valid justifications for "publishers only" rules, but Lindell may have a point if the facility is using these reasons, not to regulate the sources of publications coming into the prison, but to exclude some publications altogether without considering alternative means of access. See *Brownlee v. Conine*, 957 F.3d 353, 957 (7th Cir. 1992) (claim that inmate wasn't permitted to retain hardcover books in his cell was frivolous where inmate did not allege that he also lacked access to reasonable alternatives such as softcover books or library) ; *Jackson v. Elrod*, 881 F.2d 441, 446 (7th Cir. 1989) (affirming denial of qualified immunity to jailers because they were on notice "under clearly-established case law" that ban on hardcover books without regard for alternative means of access was unconstitutional ); *Kincaid v. Rusk*, 670 F.2d 737, 744 (7th Cir. 1982) (holding that "[m]aintenance of security and discipline do not justify the wholesale prohibition of . . . hardbound books"). We need not delve further into this question, however, because it is clear that Lindell's three books would have been confiscated even if they were new, and even if they were all softcover. Mailroom personnel seized these books for reasons that are consistent with the First Amendment, and that is all we decide in the case before us today.

Second, we consider Lindell's claim that in July 2002 and August 2003 mailroom personnel violated his First Amendment rights by preventing him from receiving printouts of materials downloaded from the internet and mailed to him from outside the prison. When the first incident occurred (actually there were two separate seizures in July 2002, but that fact is immaterial for our purposes), WSPF limited inmates' access to downloaded materials, though the scope of that limitation is difficult to discern from this record. It is undisputed, however, that by the time of the second incident the facility had in a place a policy allowing receipt of some internet materials, but inmates still were not allowed to receive downloaded materials sent by family or friends. It is also undisputed that this source restriction was the reason given in August 2003 for confiscating the materials sent to Lindell.

In response to Lindell's claim, the district court reasoned that the defendants enjoyed qualified immunity for both incidents. The court explained that in *Lindell*

*v. Frank*, No. 02-C-21-C, 2003 WL 23198509 (W.D. Wis. May 5, 2003), *aff'd*, 377 F.3d 655 (7th Cir. 2004), it had held for the first time that an outright ban on the receipt of downloaded materials violated the First Amendment, and that in *West v. Frank*, No. 04-C-173-C, 2005 WL 701703 (W.D. Wis. Mar. 25, 2005), it had added that the friends-and-family restriction likewise was unconstitutional. It followed, said the court, that the defendants were protected by qualified immunity for the first incident because it occurred before *Lindell v. Frank* was decided on May 5, 2003, and the second because it preceded the announcement of *West* on March 25, 2005.

It appears that the district court was mistaken when it said that *Lindell v. Frank* addressed restrictions on access to downloaded materials. *See West*, 2005 WL 701703, at *7 (explaining that *Lindell v. Frank* "did not involve an inmate's inability to receive materials downloaded from the internet"). Lindell, however, essentially has abandoned any argument about the first incident and focuses instead on the second. He contends that the defendants cannot claim qualified immunity for the August 2003 seizure because, in his view, another aspect of the district court's decision in *Lindell v. Frank* should have put them on notice that the friends-and-family restriction would not survive constitutional challenge. In that other litigation Lindell had challenged a broad policy that prohibited inmates from receiving by mail photocopies and newspaper or magazine clippings except from a publisher or other commercial source. *Lindell*, 2003 WL 23198509, at *1. Lindell argues that this language put the defendants sufficiently on notice because the internet is a published source. We review the district court's grant of qualified immunity *de novo*. *Campbell v. Peters*, 256 F.3d 695, 699 (7th Cir. 2001). Qualified immunity shields government officials performing discretionary functions from liability for civil damages "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.*

We might agree with Lindell that there is no meaningful distinction between a clipping from a newspaper and a print-out from a website. Nonetheless, his focus on the order issued by the *district court* in May 2003 is misplaced. We have held that a decision from a district court does not have sufficient weight to establish a point of law so clearly as to defeat a qualified-immunity defense. *See Campbell*, 256 F.3d at 701; *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995). And while it might be said, then, that our own decision in *Lindell v. Frank*, 377 F.3d at 660, was enough to put the defendants on notice that banning the receipt of internet print-outs from friends and family was no different than prohibiting clippings and copies, our decision was not issued until March 2004, many months after the last seizure at issue in this litigation. Therefore, we uphold the grant of summary judgment as to this claim.

Finally, we consider Lindell's claim that prison staff confiscated an issue of *Stuff* magazine because the address label had been torn off and, thus, he could not prove that it belonged to him. Inmates at WSPF are forbidden from damaging, destroying, altering, or disposing of their own property without prior permission. *See* WIS. ADMIN. CODE § DOC 303.35. Administrators fear that inmates will conceal contraband in altered or damaged goods. In challenging the seizure, however, Lindell alleged that his magazine was undamaged and never even had an address label. He insisted that the prison has no policy prohibiting the possession of magazines without address labels, and suggested that the magazine's erotic content was the real reason for the seizure. The defendants countered with evidence that because of his discipline problems Lindell was a "level 2" inmate at the time his magazine was confiscated, and in that status he was not permitted to have publications in his cell. The district court, noting that the defendants could have been more explicit in explaining their policy, concluded that there was a legitimate security interest underlying the prison's refusal to allow inmates to have magazines with missing mailing labels, and therefore granted the summary judgment for the defendants.

In this court Lindell repeats his same contention that the magazine was seized because of its erotic content and not because it lacked a mailing label. We review the grant of summary judgment *de novo*, construing all evidence in favor of Lindell. *Sperandeo v. Lorillard Tobacco Co.*, 460 F.3d 866, 870 (7th Cir. 2006). Prison inmates have a First Amendment right to receive and to read periodicals, in the absence of legitimate restrictions. *Sizemore v. Williford*, 829 F.2d 608, 610 (7th Cir. 1987). However, prisons may impinge on that right, provided the regulation is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

Lindell does not dispute the defendants' contention that at the time of the confiscation he was a "level 2" inmate and was not permitted to have publications in his cell. Lindell presents no argument challenging that policy, and indeed any argument would be unavailing. *See Beard v. Banks*, 126 S. Ct. 2572, 2575 (2006) (holding that a prison policy which denies newspapers, magazines, and photographs to a group of specially dangerous inmates does not violate the First Amendment). Thus, the grant of summary judgment on this claim was also appropriate.

Lindell raises a number of other issues on appeal that do not warrant discussion. He argues that the district court erred in finding that he failed to exhaust administrative remedies with respect to his claims of retaliation by prison staff, interference with his outgoing mail, and unlawful ban on inmate donations to the prison library. He also contends that the district court wrongly granted the defendants summary judgment with respect to his other claims of interference with his outgoing mail, denial of postage stamps, damage to incoming mail by the

prison's electronic envelope opener, and unlawful prohibition on inmate possession of damaged magazines.  Finally, he alleges that the district court was wrong to deny his motion for judgment as a matter of law at the close of his jury trial regarding possession of a torn magazine.  We have considered these arguments but find no merit to any of them.  Accordingly, the judgment is AFFIRMED.