NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 29, 2007[*]
Decided November 30, 2007

**Before**

Hon. JOEL M. FLAUM, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. DIANE S. SYKES, *Circuit Judge*

Nos. 05-1473 & 05-1647

| | |
|---|---|
| FLOYD MAY,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>JACK LIBBY et al.,<br>    *Defendants-Appellees.* | Appeals from the United States District Court for the Central District of Illinois<br><br>No. 01-1520<br><br>Harold A. Baker,<br>*Judge* |

**O R D E** R

Floyd May, an Illinois prisoner, sued several prison officials at Pontiac Correctional Center under 42 U.S.C. § 1983, claiming that they violated his right to free speech, retaliated against him for filing an internal grievance, and denied him access to the courts. After May presented his case-in-chief to a jury, the district court granted the defendants' motion for judgment as a matter of law. May appeals, and we affirm.

---

[*]After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

The facts underlying May's free speech claim are undisputed. In February 2001 May sent a letter to a state court clerk asking how to pursue both criminal and federal charges against one of the defendants, corrections officer Jack Libby. May sent a copy of the letter to the internal affairs unit of the prison, where Libby was assigned. Libby interpreted copying the letter to internal affairs as a threat against him that violated prison regulations. *See* 20 ILL. ADMIN. CODE § 504, App. A. R. 206. Following a hearing to determine whether May indeed made a threat against Libby, May was found guilty. The prison accordingly disciplined him by confining him in segregation, but the Administrative Review Board (ARB) later reversed the guilty finding and expunged it from May's record.

A separate incident prompted May's retaliation and access-to-courts claims. In March 2001 internal affairs received ten grievances about prison conditions, ostensibly from ten different inmates, but that were written in the same handwriting and contained nearly identical content. Each grievance requested that May act as the undersigned inmate's representative. Internal affairs interpreted the grievances to be a petition that violated prison regulations and the request that May serve as a representative to be an improper creation of a hierarchy among inmates. *See* 20 ILL. ADMIN. CODE § 504, App. A, R. 309. Investigating the matter by searching May's cell, Libby found and confiscated the five-page grievance form. According to May, however, Libby also removed several legal documents relating to his impending lawsuit against Libby.

In September 2002 May filed his *pro se* amended complaint, claiming that disciplining him for copying his letter to internal affairs violated his right to free speech, that confiscating the form constituted retaliation for using the grievance process, and that confiscating legal materials from his cell deprived him of access to the courts. May moved for summary judgment on his free speech and retaliation claims, which the district court denied.

The case proceeded to trial. Libby testified that he disciplined May solely because he copied his letter to internal affairs, not because he sent the original to the clerk. He admitted that he did not investigate May's motives before disciplining him but explained that he reasonably believed a credible threat had been made against him. He further explained that, given that prisoners knew that he worked in the internal affairs unit, he could think of no reason why May would send a copy of it there except to threaten him. As to later confiscating the grievance form, Libby explained that petitions and hierarchies among inmates are forbidden because they pose a threat to the safety and security of the prison. And lastly, one of May's fellow prisoners testified that he saw Libby remove a "thick" envelope containing more than the five-page grievance form from May's cell. But the inmate conceded that he viewed the search through an opening just two inches wide in his cell, which was many down from May's on the same side of the aisle.

The defendants then moved for judgment as a matter of law. *See* FED. R. CIV. P. 50(a). In opposition May argued that he had more evidence to present, namely the expungement of the disciplinary charge from his record and his own testimony that he sent the letter to internal affairs because he believed the prison was tampering with his mail. The district court nonetheless granted the motion, concluding that the defendants' actions—in response to both incidents—were reasonably related to penological interests. That conclusion, said the court, could not be refuted by the additional evidence that May sought to introduce.

On appeal May first argues that summary judgment should have been granted in his favor on his free speech and retaliation claims. But when there has been a trial on the merits, we will not review the district court's denial of a motion for summary judgment, which, like May's, was based on the sufficiency of the evidence rather than being a purely legal claim. *See Chemetall GMBH v. ZR Energy, Inc.*, 320 F.3d 714, 718-19 (7th Cir. 2003).

May then argues that the Rule 50 motion was improperly granted as to each of his claims. Under Rule 50, a court should grant judgment as a matter of law when a party has been "fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Winters v. Fru-Con Inc.,* 498 F.3d 734, 746 (7th Cir. 2007). Our review of a mid-trial grant of a Rule 50 motion is "essentially identical" to our review of a grant of summary judgment. *See Harper v. Albert*, 400 F.3d 1052, 1066 n.19 (7th Cir. 2005).

We turn first to May's free speech claim. Prisoners have a protected First Amendment interest in both sending and receiving mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 406-07 (1989); *Rowe v. Shake,* 196 F.3d 778, 782 (7th Cir. 1999). But restrictions on mail sent within the prison are valid so long as they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004). May argues that in applying this standard the district court erred. He contends that it was unreasonable for the defendants to perceive his letter as a threat that they could censor.

We think that the issue is closer than the district court did, but we agree that the Rule 50 motion was properly granted. May, as the defendants concede, had a right to pursue legal action against them. *See Lekas v. Briley*, 405 F.3d 602, 614 (7th Cir. 2005)*; Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996). He need not do so covertly. *See Hargis v. Foster,* 312 F.3d 404, 408-11 (9th Cir. 2002) (holding that there were genuine factual issues regarding whether statement by prisoner that guard's comments might be admissible in future litigation could be viewed, in context of their entire conversation, as coercion). But on these facts we cannot conclude that it was unreasonable for the defendants to view the seemingly utterly

gratuitous copy of May's letter as a veiled threat. *See generally Koutnik v. Brown,* 456 F.3d 777, 785 (7th Cir. 2006) (explaining that we owe substantial deference to the professional judgments of prison administrators). At trial May introduced no evidence that Libby was aware of May's purported difficulties with his mail. Thus, the defendants were entitled to judgment as a matter of law.

May makes several arguments to the contrary, but none are availing. May emphasizes that the content of his letter—a solicitation for legal advice—entitled it to heightened protection. But the Supreme Court has squarely rejected this argument. *See Shaw v. Murphy,* 532 U.S. 223, 230-32 (2001). And the argument misses the point because May was not disciplined for writing to the clerk about his lawsuit; rather, he was disciplined for sending an unnecessary copy of his letter to internal affairs. May also points out that the defendants initiated disciplinary proceedings before learning that he sent the copy of the letter not to threaten the defendants, but because his mail had been going missing. This misses the mark as well: the issue was whether it was reasonable for *the defendants* to view the letter as a potential threat. *See generally Lindell,* 377 F.3d at 658. May also emphasizes that the ARB ultimately determined that he had not intended to threaten the defendants. But this too fails to bear on whether the defendants' perception was reasonable.

May next contends that the court granted the defendants' motion before he had been "fully heard" on his free speech claim as Rule 50 requires. FED R. CIV. P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 149 (2000); *Alexander v. Mount Sinai Hosp. Med. Ctr.,* 484 F.3d 889, 902 (7th Cir. 2007). He argues that he was not permitted to testify why he copied internal affairs on his letter nor had he yet introduced into evidence the expungement of the disciplinary action from his record. But, as discussed above, neither May's actual intent nor the ARB's ultimate finding bear on whether the defendants acted reasonably in restricting May's speech to promote legitimate penological interests.

This brings us to May's retaliation claim. A prisoner is entitled to avail himself of the prison grievance process without fear of recrimination, and if prison officials retaliate, they violate the First Amendment. *See Lekas,* 405 F.3d at 614; *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996). To succeed on such a claim, a prisoner must establish that his constitutionally protected conduct—here filing a grievance—was a substantial or motivating factor in the challenged action by the defendant. *See Babcock,* 102 F.3d at 275. May asserts without elaboration that he made this showing at trial. But the undisputed evidence—that the so-called grievances were in the same handwriting, worded identically, and designated May as a representative—substantiated the defendants' explanation that they searched May's cell not because he had grieved prison conditions, but because he had circulated a petition. Banning petitions to maintain control over group activity by

prisoners is a reasonable response to a legitimate penological concern. *See Duamutef v. O'Keefe*, 98 F.3d 22, 24 (2d Cir. 1996) (explaining that as long as individual grievance procedures are available prisons may bar circulation of petitions); *Wolfel v. Morris*, 972 F.2d 712, 716 (6th Cir. 1992) ("[I]t seems clear that a prison does not violate a prisoner's rights by refusing to allow circulation of petitions."); *see also Westefer v. Snyder*, 422 F.3d 570, 575 (7th Cir. 2005) ("The decision of prison administrators as to the detrimental effect of [group activity] is a decision to which we owe great deference."). Thus, May's retaliation claim fails as a matter of law and the defendant's Rule 50 motion was properly granted as to this claim as well.

As to his access to court claim, May makes just one argument. He says that he had not yet presented evidence on this claim, so the Rule 50 motion was premature. But when the court permitted May to explain what evidence he still desired to put on, May did not mention the legal documents that he contends were removed from his cell resulting in the denial of meaningful access to the courts nor did he mention what evidence he would introduce to demonstrate actual harm to his pending litigation, as was also required. *See Lewis v. Casey,* 518 U.S. 343, 351-52 (1996); *Tarpley v. Allen County,* 312 F.3d 895, 899 (7th Cir. 2002).

The judgment is AFFIRMED.