NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 4, 2009[*]
Decided February 5, 2009

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 08-1827

| | |
|---|---|
| PETER STOJANOVIC, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 06-C-0318 |
| ROBERT HUMPHREYS, | |
| *Defendant-Appellee.* | William E. Callahan, Jr., |
| | *Magistrate Judge.* |

**O R D E R**

Wisconsin inmate Peter Stojanovic sued Robert Humphreys, the warden of the Racine Correctional Institution (RCI) where Stojanovic is currently housed, claiming that he violated Stojanovic's rights under the Eighth Amendment and the Due Process and Equal Protection Clauses of the Constitution when he removed Stojanovic's daughter and niece

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

from Stojanovic's permitted visitors list.  The district court dismissed Stojanovic's Eighth Amendment claim upon prescreening, *see* 28 U.S.C. 1915A, and granted Humphreys's motion for summary judgment on the rest of the claims.  We affirm.

Stojanovic was convicted of attempted first degree sexual assault after he approached an adult woman and ordered her to perform sex acts at knifepoint.  At all times relevant for our purposes, he was (and still is) housed at RCI.  Stojanovic, like all inmates at RCI, has a "visitors list," which includes the names of everyone authorized to visit him.  A Wisconsin warden may exclude a person from an inmate's visitors list if the warden, among other things, "has reasonable grounds to believe that" either "the inmate's reintegration into the community or rehabilitation would be hindered," "the inmate's offense history indicates there may be a problem with proposed visitation," or "the proposed visitor may be subjected to victimization."  WIS. ADMIN. CODE § DOC 309.8(4)(e)-(g) (effective July 1, 2000).

While Stojanovic was housed at other facilities, he was permitted to visit with his daughter and niece, both minors.  Nothing changed immediately after he arrived at RCI in early 2005.  But in September 2005,  RCI's warden directed the staff to review the visitors lists for all convicted sex offenders.  At the request of Supervisor Marco Tejeda, a social worker then reviewed Stojanovic's file and raised concerns about his escalating violent behavior towards women—including armed robbery, false imprisonment, and the sexual assault that led to his conviction.  Furthermore, the social worker was concerned that Stojanovic was not participating in sex-offender-treatment programs.  The social worker concluded that Stojanovic should not be allowed to visit with his daughter and niece because he was not participating in treatment, creating the "potential for victimization" of the two girls.  The warden removed the children from the visitors list that month.

Stojanovic filed a series of complaints protesting the removal of the girls from his visitors list, all of which were denied.  In March 2006 Stojanovic filed a complaint in federal court against Humphreys—who became RCI's warden in December 2005.  He alleged that RCI's policy both unfairly discriminates against sex offenders whose victims, like his, were adults and also constitutes cruel and unusual punishment.  He requested the court to order RCI to restore his daughter and niece to his visitors list and revise the policy.

While the lawsuit was pending, Stojanovic began participating in sex-offender treatment.  His daughter and niece were returned to his visitors list in late September 2006, just before he began the treatment.  While participating in the program, however, Stojanovic

admitted raping two children.  A social worker notified Tejeda of Stojanovic's admission in March 2007, and the next day the warden removed Stojanovic's daughter and niece from the visitors list.

Upon prescreening, the district court interpreted the complaint as raising claims against Humphreys in his official capacity for violations of the Eighth Amendment and Equal Protection and Due Process Clauses.  The court dismissed the Eighth Amendment claim as frivolous, *see* 28 U.S.C. 1915A, but decided that Stojanovic could proceed on his claims that the visitation policy violated his rights to due process and equal protection. Later, Humphreys moved for summary judgment on the remaining claims, which the magistrate judge, presiding by consent, granted.

On appeal Stojanovic presses his argument that the visitation policy preventing him from seeing his daughter and niece is unconstitutional because it infringes on his right to maintain a relationship with them.  We review de novo the district court's decision to dismiss Stojanovic's Eighth Amendment claim and the magistrate judge's grant summary judgment on the rest of his claims.  *See Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008); *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008).  And we note that we may affirm the judgment on any basis supported in the record.  *See EEOC v. Target Corp.*, 460 F.3d 946, 959 (7th Cir. 2006); *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 642 (7th Cir. 2000). To survive summary judgment, Stojanovic must present evidence that the prison has infringed a constitutional right.  *See Turner v. Safley*, 482 U.S. 78, 89 (1987); *Lindell v. Frank*, 377 F.3d 655, 657-58 (7th Cir. 2004).

As an initial matter, Stojanovic may have an important interest in maintaining a relationship with his daughter (and possibly his niece).  *See Hodgson v. Minnesota*, 497 U.S. 417, 484 (1990) ("Parents have a liberty interest, protected by the Constitution, in having a reasonable opportunity to develop close relations with their children.") (Kennedy, J., concurring in part and dissenting in part), *quoted in Wirsching v. Colorado*, 360 F.3d 1191, 1198 (10th Cir. 2004).  On the other hand, "denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (internal quotation marks and citation omitted); *see also DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000).  Indeed, "the very object of imprisonment is confinement," and "many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  Accordingly, when balancing the interest in maintaining family relations with the reduction in liberty required by confinement, the Constitution allows prison officials to impose reasonable restrictions upon visitation, even visitation with family members. *See id.*

A prison policy that restricts a prisoner's constitutional rights is valid if it is rationally related to legitimate penological interests. *See Overton*, 539 U.S. at 132; *Turner*, 482 U.S. at 89-91; *Lindell*, 377 F.3d at 657-58. More specifically, we ask (1) whether a rational connection exists between the policy and the legitimate interest advanced to justify it; (2) whether alternative means of exercising the right are available notwithstanding the policy; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the policy. *Overton*, 539 U.S. at 132; *Turner*, 482 U.S. at 89-91.

The policy as applied to Stojanovic easily passes the first, rational-relation prong of this test. When Stojanovic was not participating in sex-offender treatment, and in light of his hostility toward women, RCI determined that the children's safety was at risk and that Stojanovic was not being adequately rehabilitated. Safety and security are legitimate penological interests, and this is equally true in the visitation context. *See Overton*, 539 U.S. at 133 (noting that a prison has "valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct"); *Thompson*, 490 U.S. at 460. It thus rationally removed the children from Stojanovic's visitors list. Once Stojanovic began participating in a treatment program, visitation was restored. And when Stojanovic admitted to raping two other children, thereby reigniting safety concerns, RCI once again rationally terminated visitation with the girls. Although Stojanovic now suggests that he fabricated the story about the rapes, he does not deny making the statement in the first place. Prison officials were permitted to take him at his word because we "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton*, 539 U.S. at 132. And although Stojanovic argues that a confidentiality agreement prohibited prison officials from disclosing statements that he made in the course of his treatment, the agreement explains that treatment providers *must* disclose to the warden and other "appropriate authorities" an inmate's "self-reported acts" of sexual assault.

As for the second prong, we cannot tell if Stojanovic has alternative means to maintain a relationship with the children through letters or telephone calls. *See Overton*, 539 U.S. at 135. Nevertheless, even without alternative means of contact, the policy may survive constitutional attack if the other three prongs weigh heavily in favor of the policy's constitutionality. *See id.* Having already determined that the first prong weighs strongly in the prison's favor, we turn to the remaining two prongs. First we are confident that accommodating Stojanovic's interest would substantially impact prison resources by steering resources toward the children's safety and therefore hindering the guards' ability to protect other visitors and inmates. *See Overton*, 539 U.S. at 135. Finally Stojanovic has not proposed any easily implemented alternatives to the visitation restriction; this lack of any

proffered alternatives also strongly supports the reasonableness of the restriction. *See Turner*, 482 U.S. at 90. Therefore, we conclude that the visitation policy is permissible.

We now consider Stojanovic's argument that his equal-protection claim should proceed to trial. Prisoners retain their right to equal protection; nonetheless, where the disparate treatment is not based on a suspect class, like race, a prison may treat inmates differently if the unequal treatment is rationally related to a legitimate penological interest. *See May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000); *Williams v. Lane*, 851 F.2d 867, 881 (7th Cir. 1988). Stojanovic insists that he was treated differently from another inmate who, he says, was convicted of a sex crime against a child but is allowed to visit with children at RCI. Stojanovic's only evidence, however, is a statement in his affidavit that this other inmate was treated differently. But Stojanovic has not presented any evidence of the specific crimes the other inmate committed or of that inmate's treatment history. Thus, he has no triable case that the alleged unequal treatment was unrelated to the prison's interests in the security of the facility, visitor safety, and the prisoners' rehabilitation.

Finally, we conclude that the district court properly dismissed Stojanovic's claim that the inability to visit his daughter and niece constitutes cruel and unusual punishment. To state a claim under the Eighth Amendment, Stojanovic needed to allege that prison conditions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006). Stojanovic's allegations do not rise to this level. *See Overton*, 539 U.S. at 137 (contrasting situation where inmate denied some visitation rights to that where denial is arbitrary or where inmate is permanently denied all visitation); *Wirsching*, 360 F.3d at 1205 (holding that "visitation with a particular person does not constitute basic necessity, the denial of which would violate the Eighth Amendment")*; cf. Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997) (observing that "life's necessities" include shelter and heat).

AFFIRMED.