In the Matter of ALI ABDUL MALIK, Appellant, v THOMAS A. COUGHLIN, III, as Commissioner of the New York State Department of Correctional Services, Respondent.

Third Department, March 1, 1990

## APPEARANCES OF COUNSEL

*Deborah Schneer* and *David C. Leven* for appellant.

*Robert Abrams, Attorney-General (Martin A. Hotvet* and *Peter G. Crary* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

In January 1988, Eastern Correctional Facility's Media Review Committee denied petitioner (an inmate at Eastern) permission to read the November-December 1987 issue of The Freedom Press, a publication to which petitioner subscribed. This denial was based on an article in that publication entitled: *Experimentation, Genocide, and the Death of Kuwasi Balagoon* (hereinafter the article). The gravamen of the article is the author's contention that medical personnel at State correctional facilities use inmates as "guinea pigs" for the testing of "newly invented drugs", under the guise of giving them needed health care and innoculations. The author also recounts the rapid physical decline and death of a fellow inmate, Kuwasi Balagoon, noting that Balagoon, "like so many other Black and Hispanic prisoners, did not protect himself from the many opportunities the State has at its disposal to perpetrate mass genocide upon us".

Petitioner administratively appealed the denial to the facility's Central Office Media Review Committee (hereinafter COMRC), which upheld the decision. Upon petitioner's application for reconsideration, COMRC specified that petitioner could receive the publication with the objectionable article

removed. In a letter to petitioner's counsel, Deputy Commissioner Jose Hernandez-Cuebas explained that the article was censored by COMRC because it "advocates disobedience towards prison personnel" and promotes the "polarization of Blacks and Hispanics * * * against allegedly repressive and genocidal tactics used by state and prison personnel" and "is inciteful to any type of response, notwithstanding violent reactions".

Petitioner thereafter commenced this CPLR article 78 proceeding in Supreme Court challenging respondent's decision censoring the article. Supreme Court dismissed the petition, finding that respondent's determination denying petitioner access to the article was neither arbitrary nor capricious. This appeal by petitioner ensued.

Petitioner contends that Supreme Court should have annulled respondent's decision censoring the article since it was arbitrary and capricious under the applicable regulations. The regulatory standards governing the access of prison inmates to literature are set forth in 7 NYCRR 712.2. Subdivision (e) of this regulation provides that: "The publication should not incite disobedience towards law enforcement officers or prison personnel. *Incite disobedience,* for purposes of this guideline, means to advocate, expressly or by clear implication, acts of disobedience" (emphasis in original). Petitioner contends that the article at issue cannot reasonably be read to incite disobedience. Rather, according to petitioner, the purpose of the article was simply to advise readers that they should become "informed patients" capable of having meaningful discussions with their facility health care providers concerning any treatment they may receive. We disagree that the article may fairly be read to have such a benign motive.

The article contains numerous inflammatory accusations including, among other things, claims that certain practices within the prisons are calculated to increase the likelihood that diseases such as tuberculosis and AIDS will be transmitted among the prison population. The article concludes, "This is what is called Genocide—By Every Means Necessary. Wake Up, Everybody. It's 1987 and these people ain't playing."

In our view, this article was clearly intended to incite disobedience to prison personnel and possibly hysteria and violence. Thus, the article was properly censored under 7 NYCRR 712.2 (e). Furthermore, we do not agree with petitioner that the fact that inmates at two other State correc-

tional facilities may have been permitted to read the article, apparently with no resultant disruption, renders respondent's determination here arbitrary and capricious *(see, Thornburgh v Abbott,* 490 US —, —, n 15, 109 S Ct 1874, 1883, n 15).

Petitioner also argues that respondent violated his 1st Amendment rights by withholding the article. In *Thornburgh v Abbott (supra),* the United States Supreme Court recently articulated the standard to be applied in determining the constitutionality of censoring incoming publications directed at prisoners. The court held that the "proper inquiry * * * is whether the regulations are 'reasonably related to legitimate penological interests' " *(supra,* 490 US, at —, 109 S Ct, at 1876, quoting *Turner v Safley,* 482 US 78, 89). This determination is made with reference to the following four factors: (1) whether the objective underlying the regulation is "legitimate and neutral" and the regulation is "rationally related" to that objective, (2) whether alternative means of exercising the impaired right of the inmate remain open to him, (3) whether accommodation of the inmate's right will have a negative impact on others in the prison, and (4) whether alternatives exist which fully accommodate the inmate's rights at minimal cost to valid penological interests *(Thornburgh v Abbott, supra,* 490 US, at —, 109 S Ct, at 1882-1884).

■ Applying these factors to the instant case, we conclude that the article was properly withheld from petitioner. In regard to the first factor, we find that respondent's actions pursuant to 7 NYCRR 712.2 (e) were neutral and taken in pursuit of the legitimate goal of minimizing tension and disorder within the prison environment *(see, Thornburgh v Abbott, supra,* at 490 US, at —, 109 S Ct, at 1882-1883). As to the second factor, whether alternative means of exercising the asserted right exist, it is sufficient to note that petitioner does not dispute that he has access to a wide range of publications and was permitted to read the rest of that particular issue of The Freedom Press, with only the article in question excised. Under the third factor, we are persuaded that respondent could properly conclude that introduction of the article into the prison population would have an adverse impact on inmates and staff. Finally, concerning the fourth factor, there appear to be no alternatives in which petitioner's interest in reading the article can be accommodated while also preserving respondent's interest in institutional security. In light of the foregoing, we conclude that respondent's action barring the article was " 'reasonably related to legitimate penological

interests' " *(supra,* 490 US, at —, 109 S Ct, at 1876, quoting *Turner v Safley, supra,* at 89) and thus, was not unconstitutional.

We find petitioner's final contention, that respondent's conduct violated his right to free speech under the State Constitution, also to be unavailing *(see, Matter of Lucas v Scully,* 71 NY2d 399, 406).

KANE, J. P., CASEY, MIKOLL and YESAWICH, JR., JJ., concur. Judgment affirmed, without costs.