264

[605 NYS2d 569]

In the Matter of CHARLES MONTGOMERY, Appellant, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, Respondent. (Proceeding No. 1.)

In the Matter of KENNETH G. PAVEL, Appellant, v THOMAS A. COUGHLIN, III, as Commissioner of the Department of Correctional Services, et al., Respondents. (Proceeding No. 2.)

Third Department, December 30, 1993

**APPEARANCES OF COUNSEL**

*Eleanor Jackson Piel,* New York City, for Charles Montgomery, appellant.

*Kenneth G. Pavel,* Elmira, appellant *pro se.*

*Robert Abrams, Attorney-General,* Albany *(Daniel Smirlock* and *Nancy A. Spiegel* of counsel), for respondents.

**OPINION OF THE COURT**

MAHONEY, J.

In these proceedings, petitioners Charles Montgomery and Kenneth G. Pavel, both inmates at Elmira Correctional Facil-

ity in Chemung County, posit 1st Amendment challenges to a directive of the Department of Correctional Services which, consistent with 7 NYCRR 712.5, prohibits inmates from receiving newspapers from nonpublisher sources (i.e., persons or entities other than the publisher or an approved distributor). Apparently, through application of this rule, they were deprived of access to various newspaper clippings sent to them by family and friends. Applying the standard set forth in *Thornburgh v Abbott* (490 US 401), Supreme Court upheld the restriction as constitutional. We concur in that assessment and, accordingly, affirm.

■ The well-settled standard to be applied in considering the constitutionality of regulations censoring incoming publications directed at prisoners is whether the challenged regulations are " 'reasonably related to legitimate penological interests' " *(Thornburgh v Abbott, supra,* at 409, quoting *Turner v Safley,* 482 US 78, 89). This determination is to be made with reference to the following four factors: (1) whether the objective underlying the regulation is legitimate and neutral and the regulation is rationally related to that objective, (2) whether alternative means of exercising the impaired right of the inmate remain open to him or her, (3) whether accommodation of the inmate's right will have a negative impact upon others in the prison, and (4) whether alternatives exist which fully accommodate the inmate's rights at minimal cost to valid penological interests *(supra,* at 414-419; *see, Matter of Lucas v Scully,* 71 NY2d 399, 405; *Matter of Malik v Coughlin,* 154 AD2d 135, 138).

Applying these factors to the instant case, we discern no constitutional impediment. As respects the first factor, the objective of the publisher-only rule rests in the need to maintain security by reducing the means by which contraband can be secreted into the facility, an objective which undoubtedly is legitimate *(cf., Bell v Wolfish,* 441 US 520, 549; *Ward v Washtenaw County Sheriff's Dept.,* 881 F2d 325). Additionally, because the rule bans *all* newspapers from nonpublisher sources, there is little doubt that it also meets the neutrality requirements *(see, Thornburgh v Abbott, supra,* at 415). Moreover, we are satisfied on these records that the requisite reasonable relationship between the rule and the underlying objective has been established. As is made clear in the affidavit of John Maloy, Deputy Superintendent of Elmira Correctional Facility, newspapers are a prime target for secreting contraband due to their bulk and, in view of the frequency

with which they are published, those received from unidentified sources pose a monumental task to prison officials in terms of screening. Newspapers received from the publisher or from approved sources, however, are significantly less likely to contain contraband and, thus, do not present the administrative difficulties attendant to those received from unknown sources. While Montgomery contends that any rational relationship somehow is negatived by the fact that the rule applies *only* to newspapers and does not encompass books and magazines, we cannot agree. As explained in the Maloy affidavit, "[n]ewspapers pose some distinct problems which books and magazines do not". In particular, Maloy noted "it is easier to leaf through a book or magazine and check bindings", but "[b]ecause of their bulk, newspapers are more difficult to inspect" and "since many newspapers are dailies, they pose the additional practical problem of sheer volume of work to inspect and check". Indeed, far from establishing irrationality, we are inclined toward the view that this disparate treatment demonstrates instead a laudable effort on behalf of respondents to circumscribe 1st Amendment freedoms only to the extent absolutely necessary in order to maintain adequate facility security.

Turning to the second factor, it is evident that alternative means exist for petitioners to exercise their rights. Apart from availing themselves of library resources, petitioners still may receive books and magazines from any source and can themselves subscribe to newspapers. While this latter option may increase petitioners' *cost* of obtaining published material, the United States Supreme Court has held "that where 'other avenues' remain available for the receipt of materials by inmates, the loss of 'cost advantages does not fundamentally implicate *free speech* values' " *(Bell v Wolfish, supra,* at 552, quoting *Jones v North Carolina Prisoners' Union,* 433 US 119, 130-131). Under the third factor, we are persuaded that respondents properly could conclude that permitting petitioners to receive these items, because of the additional administrative review required and the danger that improper materials would inadvertently slip through, would have an adverse impact upon inmates and staff. Finally, concerning the fourth factor, there appear to be no alternatives available in this situation whereby petitioners' interests can be accommodated while also preserving respondents' interest in institutional security.

As a final matter, we also reject petitioners' corollary

arguments that respondents' interpretation of the publisher-only rule to encompass newspaper clippings as well as full newspapers lacks a rational basis or is arbitrary and capricious. As noted in the Maloy affidavit, there not only is a logistical problem in delineating the cutoff point between newspaper clippings and full newspapers (if an exception were to be made for clippings), but permitting clippings would place the same administrative burden upon facility operations because each clipping would have to be inspected and read to insure that it does not deal with prohibited subjects.

WEISS, P. J., MERCURE, WHITE and CASEY, JJ., concur.

Ordered that the order and judgment in proceeding No. 1 is affirmed, without costs.

Ordered that the order and judgment in proceeding No. 2 is modified, on the law, without costs, by converting that portion of the CPLR article 78 proceeding challenging the constitutionality of the challenged provisions into an action for declaratory judgment, declaring that the subject provisions have not been shown to be unconstitutional, and, as so modified, affirmed.