The **CITY OF NEW YORK, Plaintiff,**

v.

**LEXINGTON INSURANCE COMPANY, Defendant.**

**No. 09 Civ. 1564 (PKC).**

United States District Court, S.D. New York.

Aug. 27, 2010.

Eric Proshansky, NYC Law Department, New York, NY, for Plaintiff.

Erika Catherine Aljens, Law Office of Green & Lavelle, Michael Joseph Fleming, William J. Cleary, Law Offices of Beth Zaro Green, Brooklyn, NY, for Defendant.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge:

This is a declaratory judgment action arising out of a dispute over the scope and notice requirements of an insurance contract between plaintiff the City of New York (the "City") and defendant Lexington Insurance Company ("Lexington"). The City seeks a declaration that Lexington is obligated to provide coverage for a wrongful death action against a City employee arising out of an incident at the West Indian Day Parade in 1996. Lexington argues that no coverage is owed for claims against a City employee because it did not independently receive notice of the claims against the employee. Discovery in this case is closed and the parties have filed cross motions for summary judgment pursuant to Rule 56(c), Fed. R. Civ. P. (*See* Docket Nos. 14, 17.) The parties submit that there is no dispute as to any issue of material fact and jointly filed a Joint Stipulation of Facts in lieu of Rule 56.1 statements. (*See* Docket No. 21.) The parties filed an Amended Joint Stipulation of Facts ("Stip.") on November 2, 2009. (*See* Docket No. 29.)

For the reasons stated below, plaintiff's motion for summary judgment pursuant to Rule 56(c) is granted and defendant's cross-motion is denied. (Docket Nos. 14, 17.)

## JURISDICTION

Plaintiff the City of New York is a municipal corporation organized pursuant to the laws of the State of New York. (Compl. ¶ 2.) Defendant Lexington Insurance Company is a corporation organized under the laws of Delaware with its principal place of business in Massachusetts. (Ans. ¶ 3.)

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## BACKGROUND

### I. *The Policy.*

In or around June 28, 1996, the West Indian American Carnival Association, Inc. ("WIACA") obtained a permit from the City for its annual West Indian Day Parade (the "Parade"), which was to be held on September 2, 1996. (Stip. ¶ 2.) WIACA purchased an insurance policy from Lexington: Commercial General Liability Policy number ERGL 2840405 (the "Policy"). (*Id.* ¶ 3.) The Policy had an effective date of August 29, 1996 and an expiration date of September 2, 1996. (*Id.*) The Policy named WIACA as the "Named Insured" and covered liability arising out of the Parade. (*Id.* ¶¶ 3–4.) An endorsement to the Policy provided coverage to the City as an "Additional Named Insured." (*Id.* ¶ 5.)

### II. *The Underlying Incident.*

On or about September 2, 1996, Kenneth Thomas died after allegedly being struck by a truck towing a float in the Parade. (*Id.* ¶ 6.) Thomas's estate later filed a claim against the City and one of its employees, Police Officer John Wannamaker, for wrongful death.

### III. *Communications about the Claims.*

On April 8, 1997, the New York City Law Department forwarded two Notices of Claim related to Thomas's death to WIACA. (*Id.* ¶ 7.) The City's letter to WIACA provided that:

> Our files indicate the permit issued to you by the City of New York contains a hold harmless clause in which you expressly agree to indemnify the City and hold harmless the City for all claims and judgments for personal injuries resulting from parade activities.
>
> Please immediately inform your insurance company of the existence of these claims and have them contact me at the number listed above so that they can arrange to undertake our defense in any action which may be commenced.

(*Id.* ¶ 8.)

One notice of claim was filed by the law firm of Jacoby & Meyers on behalf of Thomas's estate (the "Jacoby Notice"). (*Id.* ¶ 9.) The Jacoby Notice alleged that "The City of New York, its agents, servants, and/or employees was negligent in the management, control, safety and security of the individuals attending this parade . . . ." (*Id.* ¶ 9; Ex. 3.) The other notice of claim was filed on behalf of Thomas's estate by the law firm of Bernstein & Bernstein (the "Bernstein Notice"). (Stip. ¶ 10.) The Bernstein Notice alleged that

> Kenneth Thomas was run over by a parade float as the result of the intentional and negligent acts and omissions of various city employees, including police officer Wannamaker (shield no. believed 4584) and various other members of NYPD, who caused the parade float vehicle to strike, run over, maim, and kill the decedent . . . by intentionally and negligently mismanaging the parade route and proceedings; instructing the driver of the vehicle how to drive, etc.

(*Id.* ¶ 10; Ex. 4.)

On April 10, 1997, WIACA forwarded the City's letter, along with the Jacoby

Notice and the Bernstein Notice to its insurance broker, Patriot Agency, Inc. ("Patriot"), by facsimile. (*Id.* ¶ 11; Ex. 5.) On the same day, Patriot forwarded a letter to A.I. Entertainment ("A.I.") which stated:

> Attached is a copy of a claim which was faxed to our office by the above mentioned insured. This claim was previously reported.
>
> Please protect the City of New York, as they are mentioned as the Additional Insured on this policy. The fax we received of this claim will be mailed to your office.

(*Id.* ¶ 12; Ex. 6.) [1] The letter from Patriot to A.I. also attached a copy of an endorsement to the Policy which provided that the City of New York Department of Parks and Recreation, among others, was an Additional Named Insured under the Policy. (*Id.* ¶ 13; Ex. 7.)

On April 18, 1997, the City sent a letter directly to Lexington, attaching the Jacoby Notice and the Bernstein Notice. (*Id.* ¶ 14.) The claims adjuster made a "General Note" on April 22, 1997 in reference to the claim:

> Our file contains a notice of claim by Alphonso Lewis as administrator for the Estate of Kenneth Thomas and Guardian of Kyle Kalvin Thomas and Kenneth Kallil Thomas Jr. and Vermaneta Lewis, wife of the deceased and mother of the infants against the City of New York. I was advised by our insured that the City of New York is supposed to be named as an additional named insured on our policy. I have requested a copy of the policy from Kevin McCoy.
>
> The Notice of Claim alleges that around 6:15pm, [claimant] was caused to sustain blunt injuries which resulted in his

death when he was struck by a truck during the Caribbean Day Parade. It is alleged that the City of N.Y. or their agents were negligent in management, control, safety and security of the parade. It is further alleged that the [claimant] suffered multiple injuries which resulted in pain and suffering and wrongful death.

> Claimant is claiming 1 million dollars for pain and suffering and one million dollars for wrongful death will send excess letter.
>
> As it stands now, the allegations against us is [sic] that we fail to managed and control the parade. Liability should be limited against us. We have to find out if we owe the City a defense await policy and contract.

(*Id.* ¶ 15; Ex. 9.)

On April 28, 1997, the claims adjuster entered another "General Note" which provided:

> The policy received indicates that the additional named endorsement names the following: West Indian American Day Carnival Association and/or City of New York Department of Parks and Recreation and/or Brooklyn Arts & Science and/or Brooklyn Botanical Garden and/or the Brooklyn Museum.
>
> The above does not name the City of New York as named in the Notice of Claim, therefore I do not see coverage for the City of NY.
>
> Spoke with Joan who will speak with the Underwriter and let me know if they will add the City of N.Y. on the policy.
>
> Right now we do not have to answer for the City of New York as they are not named on our Policy. I am sure that when the City is sued, they will implead

---

1. The parties have stipulated that the role of A.I. Entertainment is "unclear ... but it is believed to have been involved in procuring the policy for WIACA." (Stip. ¶ 12.)

our [insured] into the action and we may end up defending the City at that Point. (*Id.* ¶ 16; Ex. 10.)

On May 1, 1997, the claims adjuster sent a letter to the City denying coverage under the Policy because "the City of New York is not named as an additional named Insured under Policy # 2840405. Therefore ... Lexington Insurance Company can not undertake to defend the City of New York as they are not named as an additional named Insured on our policy." (*Id.* ¶ 17; Ex. 11.)

On October 21, 1997, the City was served with a complaint in a case captioned: *Alphonso Lewis, as Administrator of the Estate of Kenneth Thomas deceased, and as Guardian of his infant children, Kyle Kalvin Thomas and Kenneth Kallil Thomas, Jr., and Vermaneta Lewis, wife of the decedent v. the City of New York and Police Officer "John" (first name not known) Wannamaker (Shield No. believed 4584),* Index No. 23759/97, Sup.Ct. Bronx County (the "*Lewis* Action"). (*Id.* ¶ 18; Ex. 12.) The complaint named Officer Wannamaker and contained various allegations related to his conduct, including:

11. That at all times hereinafter mentioned, the defendant P.O. Wannamaker was, and still [is], a police officer employed by the City of New York, and acting in his capacity as such.

 . . .

15. That the defendant City of New York and P.O. Wannamaker jointly and severally, operated, controlled, organized, maintained, supervised, orchestrated, controlled, and managed a parade on the parade route on or about September 2, 1996.

16. That the defendants and each of them had a duty to exercise due care to prevent injury to persons

lawfully attending the aforementioned parade.

 . . .

18. That the [death of Thomas] was proximately caused by the careless, reckless, grossly negligent, grossly reckless and intentional actions of the defendants, and not by any want of care [or] assumption of risk on the part of any of the plaintiffs.

 . . .

20. That the defendants were careless, reckless, negligent, grossly negligent, and grossly reckless in the ownership operation, control, management, and supervision of the parade route, and the City was further careless, reckless, and negligent in the hiring, retention, training and supervision of the defendant P.O. Wannamaker.

21. That the defendant P.O. Wannamaker intentionally, with malice aforethought, caused the death of the plaintiff's decedent Kenneth Thomas and violation of his civil rights, under color of authority, by inter alia, abusing his authority, misdirecting driver Donovan McLean, and in otherwise intentionally causing the untimely death and suffering of the decedent Kenneth Thomas.

22. That P.O. Wannamaker was careless, reckless, negligent, grossly reckless and grossly negligent in the discharge of his official duties.

(*Id.* ¶ 19, Ex. 12.) An undated file memo from the claims adjuster states that:

The City of N.Y. have [sic] tendered to us as they are insured on our policy. I had denied coverage as we did not have the proper endorsement showing that The City of New York is named as an additional named insured on our policy.

There is no written contract with the City.

(*Id.* ¶ 20; Ex. 13.)

In March 1998, after receiving a copy of the *Lewis* Complaint, the claims adjuster made a General Note in the file:

[Received] call from [A.I.]. He advised that the City is looking for a defense. I advised that they are not named on our policy. He faxed me a copy of policy with endorsement which shows that the City of N.Y. is an additional named [insured] on our policy. I will have to [rescind] our denial which was sent out on 5/1/97. Since the City is an additional named [insured] on our policy and our policy is primary to their self [insured] policy we will end up being primary to theirs. [I] am awaiting a call from Mark Bernstein who is the atty for the City of N.Y. to discuss.

(*Id.* ¶ 21, Ex. 14.) On April 2, 1998, the City followed up with a letter to AI which provided in part:

This is to follow up on our telephone conversation yesterday.

During our conversation, you confirmed that American International Group Claims Services, Inc. ("AIGCS") did in fact receive the City's notice and demand on the above-captioned claim. (Enclosed find a copy of a letter from Patriot Agency, Inc. to A.I. Entertainment, dated April 10, 1997, together with its enclosures, including the City's letter and Notices of Claim.) You explained that the above-captioned claim number was assigned, and a file was opened. As I informed you, to the best of my knowledge, the City received no follow-up correspondence from either you or any AIG representative on this claim.

Enclosed find a copy of the Summons and Complaint grounded in this claim and a copy of the City's Answer (togeth-er with Combined Demand), which the City's Law Department served to protect the City's interests. I am told that beyond these pleadings nothing of substance has transpired in this case.

(*Id.* ¶ 22, Ex. 15.) The answer attached to the April 2, 1998 letter was served on November 5, 1997 and named only the City as a responding defendant. (*Id.* ¶ 23.) A separate answer was filed by Corporation Counsel on behalf of the City and Officer Wannamaker on February 9, 1998, but was not attached to the April 2, 1998 letter. (*Id.* ¶ 24, Ex. 16.) Corporation Counsel for the City defended Officer Wannamaker in the *Lewis* Action. (*Id.* ¶ 25.)

On April 10, 2008, the claims adjuster made a General Note in the file:

[Received] Summons & Complaint which was filed against the City of N.Y. and Police Officer "John" (first name not known) Wannamaker (Shield No believed 584). The City is looking for us to take over their defense and indemnification as they are named on our policy. I requested through Chris Benes if we can accept on behalf of the City. He replied YES.

. . .

Punitive damages are not covered by our policy so are intentional acts [sic]. Send partial disclaimer. Will also advise the City that I am opting to defend and indemnify the City based upon the allegations of the complaint. I will also send an excess letter as our policy provides coverage up to 1 million dollars.

(*Id.* ¶ 26, Ex. 17.)

On June 15, 1998, Cheryl Beckles of AIGCS wrote a memo to file which stated:

The above captioned matter was recently reassigned to me . . . . I was unable to confirm what determination was made on the coverage issues on this case.

An Alphonso Lewis against the City of New York filed suit in Bronx County and a police officer named John Wannamaker. The City has been defending itself, however, they provided the insured with a tender requesting that West Indian American Day Parade provide them with the defense and indemnification as per the fact that the City of New York is an additional insured on the policy. There was some confusion in regards whether or not this would be appropriate since the actual named additional insured is the City Park Department, however, in conversations with Mr. Benes, he indicates that this is merely is [sic] just an entity of the City and that coverage should be provided to The City of New York. *I did not accept coverage for the alleged police officer named in the complaint, as I am uncertain as to whether or not he was actually served.*

In my conversation with Mr. Lawrence Martin of the Litigation Department of the City of New York, I advised him that the carrier would in all likelihood pick up the defense for the additional insured, however, in light of the fact that there are punitive damages alleged and the addendum is in excess of the policy limits, a reservation of rights letter would be issued as well as an excess letter would be issued. This letter will be dictated on today's date.

(*Id.* ¶ 27, Ex. 18 (emphasis added).)

On June 26, 1998, AIGCS sent a letter to the City which provided:

As per our telephone conversation of last week, I advised you that AIG Claim Services is the claims adjustment company handling this matter on behalf of Lexington Insurance Company. You previously noted that AIG Claim Services acknowledged receipt of the tender made by the City of New York to the insured, West Indian American Carnival Association, Inc.

. . .

In reviewing the body of the Summons and Complaint served on the City of New York, it appears that the administrator of the Estate of Kenneth Thomas, alleged that the City of New York owned, operated, managed and supervised, controlled and/or leased the intersection of Eastern Parkway and Nostrand Avenue in the city and state of New York and that on June 28, 1996, the City of New York granted various entities or permits to operate a parade on the previously mentioned route.

It is further alleged that the City of New York and a Police Officer "Wannamaker", operated, controlled, organized, maintained, supervised, orchestrated, and managed a parade on September 2, 1996. At approximately 6:30PM, the decedent, Kenneth Thomas was struck and killed by a Peterbilt truck, driven by a Donnovan McLean. The plaintiff also further states that the death of Mr. Thomas was proximately caused by the careless, reckless, grossly negligent, grossly reckless and intentional actions of the defendants and not by anyone or care of assumption of risk on the part of the plaintiff.

AIG Claim Services on behalf of Lexington Insurance Company has agreed to assume the defense and indemnification of the City of New York as per the terms of the City of New York's additional insured status. . . . Lexington will not indemnify the City of New York for [awards based on intentional or punitive damages.] Lexington also will not provide coverage for damages sought which arise out of the claim of violation of the decedent's constitutional rights.

(*Id.* ¶ 28, Ex. 19.) The parties exchanged correspondence regarding which firm to

appoint to represent the City and eventually agreed to retain the firm of White Fleishner & Fino ("WFF") to defend the City in the *Lewis* Action at Lexington's expense. (*Id.* ¶¶ 28–32, Exs. 20–21.)

Cheryl Beckles of AIGCS wrote a memo to file dated August 25, 1998 which provided in part:

> Learned the corporation counsel will represent the police officer.... May need to issue another R of R letter to the City of New York advising that we would not pay any damages on their behalf which arose out of their failure to supervise; train; control their employee as this falls outside of the scope of the agreement between the Insured and the City.

(*Id.* ¶ 33, Ex. 22.) Following this entry, on September 9, 1998, AIGCS sent a letter to WFF. (*Id.* ¶ 34, Ex. 23.) The letter stated:

> Please appear on behalf of the city of New York only. The named insured has retained the services of [another law firm]. During the course of our last telephone conversation, you advised that the Corporation Counsel for the City of New York was protecting the interests of Police Officer Wannamaker.

(*Id.*)

In response, WFF sent a letter to AIGCS dated October 14, 1998 which provided:

> AIG Claims Service is providing a defense to The City of New York under General Liability Policy ERGL2840405. Pursuant to your instructions, we shall appear on behalf of The City of New York only. Toward that end, a substitution of counsel form has been forwarded to and executed by Lawrence Martin, Esq., of the office of Corporation Counsel. I have been advised by the Corporation Counsel's office, Gary Schaeffer, Esq., that he shall continue to represent

co-defendant Police Officer Wannamaker.

(*Id.* ¶ 35, Ex. 24.) The next day, Cheryl Beckles created an internal memorandum which recognized that the claims against the City might "revolve around hiring the police officer; inadequate training" and that such claims "should not be covered under the policy. Will review policy and address the issue further." (*Id.* ¶ 36, Ex. 25.)

The *Lewis* Action progressed and jury selection was set for January 21, 2009, but was adjourned on that date to February 9, 2009. (*Id.* ¶ 37.)

On January 15, 2009, six days before jury selection was set to begin, the City sent an email to AIGCS which questioned whether Lexington intended to assume the defense of Officer Wannamaker at trial. (*Id.* ¶ 38, Ex. 26.) The letter states that the City's understanding was that Lexington had "not assumed the defense of [Officer Wannamaker] based on allegations that the officer's conduct was intentional." (*Id.* Ex. 26.) AIGCS responded by letter dated January 21, 2009. (*Id.* ¶ 39.) In the January 21, 2009 letter, AIGCS stated that Officer Wannamaker was not an insured on the Policy and was not entitled to any coverage under the terms of the Policy. (*Id.*) The letter further rejected the request for coverage, noting that:

> [T]he failure of Officer Wannamaker to comply with the notice provisions set forth in Section IV, paragraph 2 of the policy, would constitute a material breach of condition precedents to coverage even if it could be said that Officer Wanamaker [sic] qualifies as an insured on the policy....
>
> The accident underlying [the *Lewis* Action] occurred on September 02, 1996. The lawsuit against Officer Wanamaker [sic] was filed on October 21, 1997. The first notice received by [Lexington] of

the accident in question and of the filing of this lawsuit was not received by [Lexington] from Officer Wanamaker [sic] until [Lexington] received your recent tender e-mail on January 15, 2009. Officer Wanamaker [sic] has clearly violated the policy's requirement that [Lexington] be notified of an "occurrence," the making of a claim or the receipt of a lawsuit as soon as practicable. (*Id.*, Ex. 27.) AIGCS reiterated this position in a letter to the City dated February 10, 2009. (*Id.* ¶ 40, Ex. 28.)

Subsequently, the parties settled the *Lewis* Action. (*Id.* ¶ 41.) As part of the settlement, Lexington paid $150,000 to settle the claims made against the City, and the City paid $150,000 to settle the claims asserted against Officer Wannamaker. (*Id.*) The City seeks reimbursement for the amount paid to settle the action as well as the costs it incurred in defending Officer Wannamaker. (*Id.*)

### IV. *The Dispute.*

The City claims that Lexington breached the insurance agreement by failing to reimburse the City for sums the City paid on behalf of its employee, Officer Wannamaker, in order to settle the wrongful death claims asserted in the *Lewis* Action. The City claims that Lexington is responsible for the settlement amount because it falls within the scope of the City's coverage under the Policy as "sums [the City] bec[ame] legally obligated to pay as damages because of 'bodily injury.'" (*See id.* Ex. 1 at 28.) The City further claims that, alternatively, Officer Wannamaker was an insured under the policy by virtue of his employment by the City and that Lexington was responsible to pay for any "sums [Officer Wannamaker] bec[ame] legally obligated to pay as damages because of 'bodily injury.'"

Lexington asserts that payments made as a result of the City's obligation to in-

demnify Officer Wannamaker fall outside of the scope of coverage. Lexington further asserts that Officer Wannamaker's failure to give timely notice of the occurrence and the claims in the underlying action vitiated the insurance contract with respect to his claims.

### SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c). It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. *Vt. Teddy Bear Co., Inc. v. 1–800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set out specific facts showing a genuine issue for trial," and cannot rest "merely on allegations or denials" of the facts asserted by the movant. Rule 56(e)(2), Fed. R. Civ. P. In raising a triable issue of fact, the nonmovant carries only a "limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" *Powell v. Nat'l Bd. of*

*Med. Exam'rs,* 364 F.3d 79, 84 (2d Cir. 2004) (quoting *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1072 (2d Cir.1993)).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995) (internal quotations and citations omitted); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c). In the absence of any disputed material fact, summary judgment is appropriate. *Id.*

Mere "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York.* 88 F.3d 63, 71 (2d Cir.1996) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348); *see also Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (noting that summary judgment may be granted if evidence is "merely colorable" or "not significantly probative") (citations omitted). "An opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." *Contemporary Mission, Inc. v. U.S. Postal Serv.,* 648 F.2d 97, 107 n. 14 (2d Cir.1981).

When cross-motions for summary judgment are filed, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against that party whose motion is under consideration." *Morales v. Quintel Ent'mt, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001). Here, the parties submitted a stipulation of facts and agree that there is no disputed issue of material fact; rather, the dispute concerns the scope and interpretation of contractual language, which the parties agree is not ambiguous and may be determined as a matter of law.

## DISCUSSION

As a federal court sitting in diversity, I am bound to apply New York choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties agree that New York law governs the terms of the insurance contract at issue. (*See, e.g.,* Def. Br. at 3, Pl. Br. at 21.)

■ The interpretation of unambiguous contractual language is a question of law for the Court. *U.S. Fire Ins. Co. v. Gen. Reinsurance Corp.,* 949 F.2d 569, 571 (2d Cir.1991). "Under the law of New York, 'if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company.'" *Lumbermens Mut. Cas. Co. v. Town of Pound Ridge, Westchester Cnty.,* 362 F.2d 430, 432 (2d Cir.1966).

### I. *Scope of Coverage for Payments by the City.*

It is not disputed that Lexington issued a $1 million policy of insurance to WIACA, that the City was an Additional Named Insured under the Policy, and that Officer Wannamaker was covered in his capacity as an employee while acting within the scope of his duties as such. (Stip. ¶¶ 3, 4, 5, Ex. 1, Def. Br. in Supp. at 3. ("Lexington now concedes for purposes of this mo-

tion that Officer Wannamaker qualified as an "insured." ").) The Policy provides that Lexington was required to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which [the Policy] applie[d]." (*See id.* Ex. 1 at 28, Commercial General Liability Coverage Form, Section 1(*l*)(a).) The parties also agree that the settlement amount paid by the City to settle the *Lewis* Action is covered by the Policy language, i.e., that the City was legally obligated to pay the settlement amount as damages because of "bodily injury." (*See* Stip. ¶ 41.) The parties further agree that the liability incurred by Officer Wannamaker fell within the scope of the Policy's coverage. (*See* Stip. ¶ 41, Def. Br. at 3 n. 1, Def. Opp. at 9 ("The money allocated to Officer Wannamaker under the settlement agreement was certainly money he was required to pay 'as damages' because of bodily injury and would have been covered but for his failure to provide proper notice.").)

The City claims that Lexington is obligated under the terms of the Policy to reimburse the City for all sums paid on behalf of Officer Wannamaker because the City was "legally obligated to pay [the sums] as damages because of 'bodily injury'" based on the City's statutory obligation to indemnify its employees for any damages incurred as a result of actions taken within the scope of the employee's employment. *See* N.Y. Gen. Mun. § 50–K(3). Lexington counters that the amount paid by the City to indemnify its employee was not an amount paid "because of 'bodily injury'" but rather was paid in fulfillment of a contractual obligation to indemnify Officer Wannamaker, and it was therefore excluded under the terms of the policy.

The Policy excludes " 'bodily injury' for which the insured is obligated to pay damages by reason of the assumption of liabili-

ty in a contract or agreement." (*Id.* Ex. 1 at 28.) "This exclusion does not apply to liability for damages (1) [t]hat the insured would have in the absence of the contract or agreement." (*Id.*)

■ Under New York law, policy coverage "exclusions are not to be extended by interpretation or implication but are to be accorded a strict narrow construction." *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Ins. Co. of N. Am.,* 188 A.D.2d 259, 261, 590 N.Y.S.2d 463 (1st Dep't 1992). Also, as explained above, any ambiguity in insurance contracts should be resolved in favor of the policy holder. *See Lumbermens,* 362 F.2d at 432.

■ The Policy excludes coverage for liability assumed "in a contract or agreement." In order for plaintiff to recover under the Policy, it must establish that it is legally obligated, apart from the exempted contractually assumed liability, to pay damages as a result of bodily injury. *See Weissblum v. Glens Falls Ins. Co.,* 40 Misc.2d 964, 964, 244 N.Y.S.2d 689 (N.Y.Sup.1963). Where plaintiff can demonstrate that liability to pay the damages does not depend on a written contract, i.e., that the liability arises from another obligation, the liability does not fall within the exclusion. *See Lumbermens,* 362 F.2d at 434.

The City's obligation to indemnify its employees arises under New York General Municipal Law section 50–k(3), not a contract of indemnification. The statute provides that "[t]he city shall indemnify and save harmless its employees in the amount of any ... settlement of a claim ... provided that the act or omission from which such ... settlement arose occurred while the employee was acting within the scope of his public employment...." N.Y. Gen. Mun. Law § 50–k(3) (McKinney 2007). Therefore, the City is required, by statute, to indemnify its employees for all actions

taken within the scope of their employment. Because the City's obligation to indemnify its employees arises under statute rather than a contract, it does not fall within the exclusion to coverage.

The cases cited by Lexington are inapposite because the City's obligation to pay the settlement amount for damages arising out of bodily injury was not based on a written contract of indemnification. It arose from a statutory obligation, as well as the doctrine of *respondeat superior.* Therefore, the settlement amount paid on behalf of Officer Wannamaker does not fall within the policy's exclusion for amounts paid pursuant to contractual indemnification.

Other language in the Policy supports the conclusion that it was intended to cover such damages. For example, the Policy also excludes certain categories of "Employer's Liability," but does not exclude liability incurred as a result of actions by an employee. (*See* Stip. Ex. 1 at 29 (excluding " 'Bodily injury' to (1) an employee of the insured . . ." but including employees as insureds "for acts within the scope of their employment").)

Lexington does not dispute the fact that the City was "legally obligated" by statute and by virtue of its status as employer under the doctrine of *respondeat superior* to pay the damages arising from "bodily injury" as a result of Officer Wannamaker's actions. Lexington does not raise any issue of material fact to defeat the City's motion for summary judgment and the City's motion (docket no. 17) is granted.

II. *Compliance with Notice Provisions.*

Lexington filed a motion for summary judgment which seeks a declaration that Officer Wannamaker failed to comply with the notice provisions of the Policy and therefore any claim on his behalf is barred.

For the reasons explained above, Lexington was obligated to reimburse the City for settlement fees paid under the Policy and therefore, the issue of Officer Wannamaker's compliance with the notice provisions is moot. However, even if the City's payment on behalf of Officer Wannamaker was not independently covered under the terms of the Policy, the notice the City provided sufficiently complied with the Policy's requirements and Lexington is not entitled to summary judgment. For the reasons more fully explained below, defendant's motion for summary judgment (docket no. 14) is denied.

■ Compliance with a policy's notification provisions is a condition precedent to the insurer's liability under the policy. *See Webster ex rel. Webster v. Mount Vernon Fire Ins. Co.,* 368 F.3d 209, 214 (2d Cir.2004) (citing *Power Auth. v. Westinghouse Elec. Corp.,* 117 A.D.2d 336, 502 N.Y.S.2d 420 (1st Dep't 1986)). It is undisputed that Officer Wannamaker did not provide independent notice to Lexington of the claims at issue. Instead, the City claims that its notice satisfied the notification provisions on Wannamaker's behalf.

The Policy defines the words "you" and "your" as the "Named Insured shown in the Declarations." (Stip. Ex. 1 at 28.) The parties agree that the City qualified as an additional Named Insured under the policy and that Officer Wannamaker was an insured. (*See id.* ¶¶ 3, 4, 5, Ex. 1, Def. Br. in Supp. at 3.) Therefore, references to "you" or "your" in the Policy are references to the City.

The Policy conditions coverage on the fulfillment of duties outlined in section IV(2): Duties in the Event of Occurrence, Offense, Claim or Suit. (*Id.* Ex. 1 at 35.) That section provides:

(a) You must see to it that we are notified as soon as practicable of an "oc-

currence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence or offense."

(b) If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable. You must see to it that we receive written notification of the claim or "suit" as soon as practicable.

(c) You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(d) No insured will, except at the insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(*Id.* Ex. 1 at 35–36.) The parties agree that the City complied with the notice provisions with respect to the claims as-

serted against the City. (*See id.* ¶¶ 7, 41.) The question before the Court is whether the City's notice of the occurrence and claims complied with the notice requirements with respect to the claims asserted against Officer Wannamaker.

The Notices forwarded by the City included language referencing the existence of a claim against Officer Wannamaker. (*See id.* ¶¶ 9–10 (referencing claim against "the City of New York, its agents, servants, and/or employees . . ." and negligent acts and omissions of "various city employees, including police officer Wannamaker").) When the *Lewis* Action was filed, the City forwarded a copy of the complaint to Lexington. (*Id.* ¶ 22.) The complaint asserted claims against the City and Officer Wannamaker in his capacity as an employee of the City of New York. (*Id.* ¶ 19, Ex. 12 ¶¶ 11, 15, 20, 22.)

The Policy's notice provisions in sections IV(2)(a) and (b) only required notice from "You," meaning from the City or WIACA. As explained above, it is undisputed that WIACA and the City sent the notice of claim and the complaint to Lexington. (*See id.* ¶¶ 9–14, 22.) Therefore, the question becomes whether the City's notice and subsequent communications with Lexington were sufficient to satisfy the policy's requirements in section IV(2)(c). Section IV(2)(c) required the City "and any other involved insured" to send Lexington "copies of any demands, notices, summonses, or legal papers received in connection with the claim or suit." Lexington asserts that Wannamaker's failure to independently send copies of all documents violated this provision.

 Where a policy provides "that *each* insured has a duty to comply with the policy's notice requirements," the "notice provided by one insured in accordance with the policy terms will not be imputed

to another insured." *Webster*, 368 F.3d at 214–15; *see also Travelers Ins. Co. v. Volmar Constr. Co.*, 300 A.D.2d 40, 42, 752 N.Y.S.2d 286 (1st Dep't 2002). "An insurer's actual notice of a potential claim … does not relieve the insured of her notice obligations." *Webster*, 368 F.3d at 215. Additional insureds have an implied duty, independent of the named insured, to provide the insurance company with the notices required under the policy, "i.e., notice 'as soon as practicable' of both the 'occurrence' and of any 'claim' or 'suit' arising therefrom." *See 23–08–18 Jackson Realty Assocs. v. Nationwide Mut. Ins. Co.*, 53 A.D.3d 541, 542, 863 N.Y.S.2d 35 (2d Dep't 2008). "The fact that an insurer may have received notice of the claim from the primary insured, or from another source, does not excuse an additional insured's failure to provide notice." *Id.* at 543, 863 N.Y.S.2d 35.

■ There are, however, situations in which timely notice by one insured may be deemed notice by another insured. "Where two or more insureds are defendants in the same action, notice of the occurrence or of the lawsuit provided by one insured will be deemed notice on behalf of both insureds only where the two parties are united in interest or where there is no adversity between them." *Id.* It is the burden of the plaintiff to demonstrate that it is united in interest with the insured. *Id.* (citing *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 508 N.Y.S.2d 923, 501 N.E.2d 572 (1986)).

"Unity of interest is a question of law to be determined from an examination of the nature of plaintiff's claim and the jural relationship existing between the parties." *Connell v. Hayden*, 83 A.D.2d 30, 44, 443 N.Y.S.2d 383 (2d Dep't 1981). Unity of interest arises where "the interest of the parties in the subject-matter is such that they stand or fall together and that judg-

ment against one will similarly affect the other." *Id.* at 40, 443 N.Y.S.2d 383 (quoting *Prudential Ins. Co. of Am. v. Stone*, 270 N.Y. 154, 159, 200 N.E. 679(1936)). "[W]hen because of some legal relationship between the defendants they necessarily have the same defenses to the plaintiff's claim, they will stand or fall together and are therefore united in interest." *Id.* at 43–45, 443 N.Y.S.2d 383. This includes relationships in which a defendant is "by statute fully, personally, and vicariously liable for the torts of [another]." *See id.* at 46, 443 N.Y.S.2d 383.

Furthermore, the potential defense that the employee was acting outside the scope of the employment at the time of the action at issue does not defeat the unity of interest between an employer and employee, especially when the defense is not raised. *See id.* at 48, 443 N.Y.S.2d 383. "Insofar as [Officer Wannamaker] was sued as an employee of [the City], he and [the City] are united in interest." *Nat'l Union Fire Ins.*, 188 A.D.2d at 261, 590 N.Y.S.2d 463.

■ As explained above, the City was vicariously liable, pursuant to a statutory obligation of indemnification and the doctrine of *respondeat superior*, for the torts committed by Officer Wannamaker within the scope of his employment. Therefore, because the City's "interests were not adverse to those of [Officer Wannamaker] at the time the summons and complaint were forwarded to [Lexington], the notice provided by [the City]'s forwarding of the summons and complaint sufficed to defeat the carrier's affirmative defense of late notice." *N.Y. Tel. Co. v. Travelers Casualty & Sur. Co. of Am.*, 280 A.D.2d 268, 268, 719 N.Y.S.2d 648 (1st Dep't 2001); *see also Rose v. State*, 265 A.D.2d 473, 474, 696 N.Y.S.2d 527 (2d Dep't 1999). The defendant's motion for summary judgment is denied.

## CONCLUSION

The plaintiff's motion for summary judgment is granted. (Docket No. 17.) The defendant's cross-motion is denied. (Docket No. 14.) Plaintiff shall submit a proposed judgment within 14 days.

SO ORDERED.